**In re Timothy and Tammy JOSLYN.**

**Timothy and Tammy JOSLYN, Plaintiff,**

v.

**FORD MOTOR CREDIT CORP., Defendant.**

**Bankruptcy No. 86–00045.
Adv. No. 86–00039.**

United States Bankruptcy Court,
D. New Hampshire.

June 30, 1987.

Terrie Harman, Portsmouth, N.H., for debtors.

Frederick Coolbroth, Manchester, N.H., for Ford Motor Credit Co.

Janis Burns, Boston Federal Office Building, Boston, Mass., Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The merits of this adversary proceeding were tried before the court on June 23, 1986 on the debtor-plaintiffs' Complaint For Order Of Contempt Judgment and the defendant's answer thereto. The debtors' adversary complaint prayed that Ford Motor Credit Corp. be held in contempt for violating the automatic stay imposed by 11 U.S.C. § 362, and that the court order the defendant to pay plaintiffs for actual damages, costs and attorneys' fees, as well as an assessment of punitive damages against the defendant. In a Memorandum Opinion dated January 7, 1987, (Bankr.D.N.H.1987), this court ruled that

> ... I conclude that the defendant was aware of the Joslyns' bankruptcy filing and nevertheless willfully repossessed their automobile in violation of the automatic stay. Slip op. at 6.

In its January 1987 Memorandum Opinion, the court directed that the Clerk would set down for a further hearing, the issue of the damages sustained by the plaintiffs as a result of defendant's willful violation of the automatic stay. The hearing on the issue of damages was held by the court on February 18, 1987, at which time the court received both testimonial and documentary evidence regarding same.

The legal issues presented by the plaintiffs' claim for damages arise out of § 362(h) of the Bankruptcy Code. Said section provides in relevant part as follows:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(h).

Accordingly, the issues presented for the court's consideration at this juncture in this adversary proceeding are: (1) whether or not punitive damages are justified in the instant circumstances; and (2) does § 362(h) authorize the court to award these plaintiffs, as part of their actual damages, attorneys' fees *other than* the attorneys' fees incurred in actually recovering the collateral from defendant.

In the instant proceeding, on the second issue, the defendant's legal argument is that § 362(h) does not authorize attorneys' fees for the litigation incident to the stay violation—but rather only authorizes recovery of attorneys' fees for the legal services necessary to obtain actual return of the collateral to the debtors following its repossession. Plaintiffs' attorneys take the opposite position and, in fact, in the instant proceeding, most of the plaintiffs' attorneys' fees which are claimed as actual damages pursuant to § 362(h), are claimed as having been incurred in the post-recovery litigation on the damages issue rather than merely as attorneys' fees incurred in the course of obtaining recovery of the collateral for the debtor-plaintiffs.

It is necessary at this point to itemize the amounts claimed as damages and to specify the various categories into which those claimed damages fall. First of all, plaintiffs claim that they are entitled to punitive damages under § 362(h) in light of the egregious circumstances presented by the facts of the willful stay violation in their case. Plaintiffs request no particular amount as an appropriate award of punitive damages in their case. Rather, in their memorandum of February 18, 1987, plaintiffs discuss cases awarding punitive damages pursuant to § 362(h) in amounts ranging from $1,000 to $5,000 and $10,000. Plaintiffs' memorandum concludes with a request that the court enter a "stinging" punitive damage award herein.

The first item of plaintiffs' actual damages is the attorneys' fees component, as to which the plaintiffs claim a total of $10,355 as attorneys' fees through February 17, 1987, related solely to the stay violation by the defendant.

The expenses of plaintiffs' attorneys in pursuing the stay violation issue for plaintiffs, also claimed as an element of actual damages, were $958.76.

The remaining elements of actual damages claimed by plaintiffs are a loss of wages of the plaintiff husband in the total amount of $84.45 and the costs incurred by the plaintiffs for travel expenses related to the automatic stay litigation, itemized in Plaintiffs' Exhibit # 4 from the February 18, 1987 hearing, and consisting of plaintiffs' trips between Connecticut and New Hampshire for conferences and hearings in the automatic stay litigation. In this regard plaintiffs made ten trips between Connecticut and New Hampshire as to which the parties stipulated on May 21, 1986 (approved by this court's order of May 27, 1986) that the costs for one such round trip were $180. This $180 amount breaks down to $90 for travel of approximately 450 miles at .20¢ per mile and $90 for meals, child care, and miscellaneous expenses. Of the ten total trips, the defendant has already stipulated to paying plaintiffs for the cost of one such trip and has actually paid the plaintiffs for the trip in early May 1986 in the amount of $180. The remaining nine trips remain unreimbursed at this time, however.

### ISSUE ONE

As mentioned above, the first issue presented for the court's consideration at this juncture is whether or not punitive damages are justified in the circumstances of the instant case. As found in this court's Memorandum Opinion dated January 7, 1987, Slip Op. at 5:

... even though actually shown the debtors' bankruptcy papers, the defendant, through its repossession agents, at that crucial point [at the scene of the repossession on February 7, 1986] refused to cease its repossession efforts.

In its Memorandum Opinion of January 7, 1987, the court also found that:

... there is nothing in the defendant's bankruptcy-oriented procedures..... which indicates that those procedures included instructions by the defendant to their repossession agents designed to ensure debtors the protection of the automatic stay in instances such as that here involved.... Slip op. at 5.

From the court's foregoing findings, it is clear that this court's ruling holding Ford Credit liable for a violation of the automatic stay, was predicated on the fact that it was liable through the actions of its agent, Rapid Reporting & Recovery, Inc. That agent is *not* a defendant in this adversary proceeding. Further, there is no indication that Ford Credit had knowledge or notice that its agent in any earlier instances had repossessed automobiles even when shown at the repossession scene copies of debtors' bankruptcy papers—as was done in the present case.

Thus, this court does not believe that an award of punitive damages to the debtor-plaintiffs is appropriate in the circumstances of the present case for two reasons: (1) While Ford Credit is liable for the violation of the automatic stay, it is liable through the actions of its agent, and the agent is not a defendant; and (2) there is no indication that Ford Credit had knowledge or notice that its agent had violated the automatic stay in such circumstances before.

### ISSUE TWO

Turning to the second issue presented for the court's consideration—whether § 362(h) authorizes the court to award plaintiffs, as part of their actual damages, attorneys' fees *other than* the attorneys' fees incurred in actually recovering the collateral from defendant. As mentioned above, most of the plaintiffs' attorneys' fees claimed as actual damages pursuant to § 362(h), are claimed as having been incurred in the post-recovery litigation on the damages issue rather than merely as attorneys' fees incurred in the course of obtaining recovery of the collateral for the debt-

or-plaintiffs. The defendant argues that § 362(h) does not authorize attorneys' fees for the litigation incident to the stay violation—but rather only authorizes recovery of attorneys' fees for the legal services necessary to obtain actual return of the collateral.

■ The court's ruling on this § 362(h) question is that § 362(h) *does* authorize attorneys' fees other than merely those incurred in recovering collateral. In other words, attorneys' fees do not stop accruing under § 362(h) as of the collateral recovery date. The whole point of the § 362(h) provision is to discourage violations of the automatic stay by appropriate sanctions— and litigation to determine and enforce the sanctions is necessarily implied. This court accordingly believes it appropriate to award damages for the violation of the automatic stay *and* to make an appropriate award of the attorneys' fees necessary to remedy that stay violation.

Since this court found Ford Credit liable for the actions of its agent in causing the stay violation, it must be found liable in causing the debtors' otherwise unnecessary attorneys' fees, incurred solely to remedy that violation.

Therefore, the court awards the plaintiffs, as actual damages under § 362(h), the following:

(1) Reasonable attorneys' fees in the amount of $5,000;

(2) Actual expenses incurred by their attorneys in pursuing the stay violation issue for the plaintiffs in the amount of $958.76; and

(3) Plaintiffs' own actual damages, lost wages in the amount of $84.45, and remaining travel expenses in the amount of $1,620 (9 round trips at $180 per trip). These last two items total $1,704.45.

A separate final judgment, in accordance with the foregoing findings and conclusions, and the prior Memorandum Opinion of January 7, 1987, to the foregoing effect, shall be entered.

* See 77 B.R. 524.