**In re Jeri L. PACE, Debtor.**

**John E. HAVELOCK and John R. Strachan, Appellants,**

v.

**Harold S. TAXEL, Trustee, Appellee.**

BAP No. SC–92–1761–ROJe.

Bankruptcy No. 88–04238–B7.

Adv. No. 91–90142–B7.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted June 18, 1993.

Decided Oct. 22, 1993.

Thomas J. Yerbich, Anchorage, AK, for John E. Havelock and John R. Strachan.

Richard C. Norton, San Diego, CA, for Harold S. Taxel, Trustee.

Before: RUSSELL, OLLASON, and JELLEN [1], Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

The bankruptcy court awarded the trustee attorneys' fees and costs against the debtor's attorneys [2] pursuant to 11 U.S.C. § 362(h) [3] for violations of the automatic

---

**1.** The Honorable Edward Jellen, Bankruptcy Judge, Northern District of California, sitting by designation.

**2.** Attorney John R. Strachan ("Strachan") and attorney John E. Havelock ("Havelock") are

both the appellants in this appeal and are referred to collectively as "Appellants".

**3.** Unless otherwise indicated, all chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and to the Federal

stay. The violations involved exercising dominion and control over property of the debtor's estate, including a state court malpractice lawsuit and the proceeds of the settlement of the lawsuit. The attorneys appeal. We AFFIRM.

## I. FACTS

The essential facts of the case are undisputed or uncontested. The debtor, Jeri L. Pace, presently known as Jeri LeMai ("LeMai"), and her former husband, H. Russell Pace ("Pace"), were the sole owners of two Alaska corporations known as The Pines Corporation and Pace Corporation (hereinafter collectively referred to as "the corporations").

In January 1985, the corporations sold their assets, including the Alcohol Beverage Dispensary Licenses (hereinafter collectively referred to as "the liquor licenses"), to The New Pines Corporation. LeMai and Pace retained legal counsel to assist them in the sale transaction to The New Pines Corporation.

In September 1986, Pace filed a Chapter 11 petition in the District of Alaska. In December 1986, the Pace bankruptcy case was converted to Chapter 7 and Kenneth Battley was appointed trustee.

In July 1987, LeMai and Pace discovered that their attorneys may have committed malpractice by failing to file a financing statement to perfect their security interest in the liquor licenses. In October 1987, LeMai and Pace filed a complaint in Alaska Superior Court against their former attorneys for malpractice for failing to perfect their security interest in the liquor licenses (hereinafter the "Alaska lawsuit").

In November 1987, the First Amended Complaint was filed in the Alaska lawsuit, removing LeMai as a plaintiff from lawsuit.

On May 26, 1988, LeMai filed her petition under Chapter 7 in the Southern District of California. LeMai did not list her claim for legal malpractice and her interest in the pending Alaska lawsuit on her Statement Of Financial Affairs and Schedules Of Assets And Liabilities filed with the bankruptcy court as part of her petition for bankruptcy. Consequently, the trustee believed LeMai's bankruptcy estate had no assets. On September 23, 1988, the order of discharge was entered in LeMai's bankruptcy and the case was ordered closed on February 21, 1989.

On July 26, 1989, shortly after her discharge, LeMai entered into an agreement with Pace to share any proceeds received from the pending Alaska lawsuit on a 50/50 basis. On July 31, 1989, LeMai hired Appellant, attorney John E. Havelock ("Havelock"), to prosecute the Alaska lawsuit. In the summer of 1989, Pace hired Appellant, attorney John R. Strachan ("Strachan"), to prosecute the lawsuit and informed Strachan of his bankruptcy. Despite having hired their attorneys, active prosecution of the Alaska lawsuit did not re-commence at this time. Pace had not been discharged and his bankruptcy case had not yet closed. It appears that the decision was made to wait until Pace was discharged before re-commencing prosecution of the Alaska lawsuit and was based upon the mistaken belief that the lawsuit would be deemed abandoned after the discharge.[4] Strachan admitted that he "suggested to (Pace) that there was little point in proceeding with a case if the only beneficiaries of the work involved were to be creditors."

In September 1989, Pace's bankruptcy case in the Alaska bankruptcy court was closed and Pace was discharged.[5] In No-

---

Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

**4.** The Alaska lawsuit was not listed by Pace in his bankruptcy case. *See In re Pace,* 132 B.R. 644, 645 (Bankr.D.Alaska 1991), *aff'd,* 146 B.R. 562 (9th Cir. BAP 1992).

**5.** The bankruptcy court in Pace's bankruptcy case determined that Pace failed to amend his

schedules appropriately when he was fully aware of the malpractice action. *In re Pace,* 132 B.R. 644, 647 (Bankr.D.Alaska 1991), *aff'd,* 146 B.R. 562 (9th Cir. BAP 1992). That case was closed and subsequently reopened for purposes of administering the lawsuit proceeds as property of the estate.

vember 1989, LeMai rejoined the Alaska lawsuit by filing the Second Amended Complaint which once again named Pace and LeMai as plaintiffs.

On April 2, 1990, LeMai disclosed to Appellants that she had filed a Chapter 7 case and provided a copy of her statements and schedules filed with her bankruptcy petition at her deposition in the Alaska lawsuit. Appellants admit that they were aware of LeMai's bankruptcy at this time, but that they ignored it because they believed this fact was not legally significant. As Strachan stated, "at the LeMai deposition, we first learned of her bankruptcy" but "I did not pursue it further; there was no need."

Shortly thereafter, the defendants in the Alaska lawsuit discovered that both LeMai and Pace had filed bankruptcy petitions and that both LeMai and Pace did not disclose the Alaska lawsuit to their respective trustees or to the bankruptcy court. The defendants in the Alaska lawsuit urged the Appellants to contact the trustees of the bankruptcy estates and inform them that the lawsuit was property of the respective bankruptcy estates. Despite the warning, Appellants did not contact the trustees. Consequently, in July 1990, the defendants in the Alaska lawsuit filed a motion with the Alaska Superior Court to substitute the trustees as the real parties in interest in the Alaska lawsuit.

Appellants opposed this motion and somehow convinced the Alaska Superior Court that the trustees had abandoned their interests in the Alaska lawsuit and were not the real parties in interest. Consequently, the Alaska Superior Court denied the motion to substitute the trustees as the real parties in interest in the Alaska lawsuit. Appellants continued to conceal the pending Alaska lawsuit from the trustees and the bankruptcy courts.

In December 1990, the defendants in the Alaska lawsuit informed the San Diego Office of the United States Trustee of the existence of the pending Alaska lawsuit. Harold S. Taxel ("trustee") was informed for the first time about the Alaska lawsuit by the United States Trustee's office by letter, dated January 16, 1991. On Febru-

ary 7, 1991, the bankruptcy court reopened this bankruptcy case and reappointed the trustee as trustee of the LeMai bankruptcy estate.

On February 8, 1991, the trustee informed Appellants, Strachan and Havelock, that this bankruptcy estate had been reopened and that LeMai's interests in the legal malpractice claim and the Alaska lawsuit were property of the bankruptcy estate. The trustee requested that Appellants cease prosecution of the Alaska lawsuit and informed them that any further prosecution of the Alaska lawsuit constituted a violation of the automatic stay under the Bankruptcy Code. At this time, Strachan and Havelock were clearly on notice that their actions were violative of the stay. In his letter addressed to both Havelock and Strachan, Richard C. Norton, of Estes & Hoyt P.C., (who represented the trustee, Harold S. Taxel), explained that LeMai had removed herself from the Alaska state court malpractice action; that she moved to San Diego, filed bankruptcy, and obtained a discharge; that she moved back to Alaska and amended back in as a plaintiff; and that it appeared that she intentionally left the cause of action off her schedules. In addition, the letter explained: (1) that the bankruptcy estate is comprised of all legal and equitable interests of the debtor, citing § 541; (2) that the lawsuit being asserted by Appellants was clearly included in property of the estate; (3) that any act to exercise control over this lawsuit is in violation of the automatic stay citing § 362(a)(3); and (4) that any further prosecution of the Alaska lawsuit would be a violation of the stay and could subject them to liability for damages. Nonetheless, Appellants denied that LeMai's interest in the pending Alaska lawsuit was property of the bankruptcy estate and continued to prosecute the lawsuit.

On February 13, 1991, a settlement conference was held before Judge Ripley of the Alaska Superior Court and the parties to the Alaska lawsuit reached a tentative agreement to settle the lawsuit for $300,-000.00. In order to terminate their liability to the bankruptcy estates, defendants in

the Alaska lawsuit would not agree to settle the lawsuit with LeMai and Pace without the trustees' approval of the settlement agreement. Consequently, Judge Ripley held a conference in his chambers with all parties to the Alaska lawsuit and their attorneys present. The attorneys for the LeMai and Pace trustees participated in this conference by telephone for purposes of approving the terms of the settlement agreement.

The trustees would not approve the settlement agreement unless the settlement proceeds were deposited into an escrow account which would not be disbursed until the LeMai and Pace trustees' claims to the proceeds were resolved. It was agreed that the trustees would have thirty (30) days to assert their claims to the settlement proceeds and that the proceeds would not be disbursed until the LeMai and Pace trustees' claims were resolved. The terms of the settlement, agreed upon by the parties to the Alaska lawsuit at the settlement conference, were announced on the record and approved by the trustees for the LeMai and Pace bankruptcy estates. The relevant terms of the settlement agreement were as follows:

1. The amount of the settlement was $300,000;

2. The $300,000 would be deposited into an interest bearing escrow account subject to the control of the Clerk of the Alaska Superior Court;

3. The trustees would have 30 days (on or before March 15, 1991) to assert a claim to the proceeds; and

4. The proceeds deposited into the escrow account would not be disbursed until the trustees' claims to the proceeds were resolved.

In accordance with the settlement agreement, on March 8, 1991, the LeMai trustee filed the instant adversary proceeding with the bankruptcy court asserting the estate's claims to the settlement proceeds. This adversary proceeding requested damages for violations of the automatic stay, and declaratory and injunctive relief with respect to the proceeds. It is this adversary proceeding that culminated in the order appealed herein.

On March 7, 1991, the escrow account was opened and settlement proceeds were deposited. On March 8, 1991, just one day after the settlement proceeds were deposited into the escrow account, Appellants filed a motion with the Alaska Superior Court to have all settlement proceeds released and disbursed to Appellants by March 15, 1991. The trustee for the Pace estate, Kenneth Battley, was never served with this motion and did not initiate further action; the trustee for the LeMai estate received this motion in San Diego on March 14, 1991, just one day before the proposed disbursement.

The LeMai trustee [6] immediately demanded that Appellants withdraw their request for disbursement of the settlement proceeds and informed Appellants that their request was a violation of the automatic stay and the settlement agreement. Appellants refused to withdraw the motion, describing the trustee's claims as "phony," and threatened that the trustee's counsel was increasing his "exposure" by asserting the trustee's claims to the proceeds.

Appellants' motion for disbursement of the settlement proceeds was opposed by both trustees, as well as one of the defendants in the Alaska lawsuit, as being contrary to the terms of the settlement agreement. On March 28, 1991, the bankruptcy court issued a preliminary injunction enjoining the Appellants from receiving or disbursing the settlement proceeds deposited into the escrow account during the pendency of the adversary proceeding. Consequently, the Alaska Superior Court did not grant Appellants' motion requesting disbursement of the settlement proceeds.

The Appellants filed a motion to dismiss the trustee's complaint initiating the instant adversary proceeding and to close the debtor's bankruptcy estate. The bankruptcy court never reviewed this motion because it was defective in that no hearing was requested or scheduled.

6. From this point forward only the LeMai trustee was involved in the litigation.

In that motion to dismiss Appellants stated the following:

There is a serious question of whether a reopened [case] carries with it an automatic stay of a claim against the debtor. There is no question that ongoing litigation on behalf of the debtor is not affected by an automatic stay. The Anchorage Superior Court did not have much trouble with the merits of that claim.…

Ironically, in that same motion, Appellants accused the LeMai trustee's counsel of making misrepresentations to the court and made the following threats:

In some states where an attorney misrepresents facts known to be untrue for the purpose of instigating litigation or extort a settlement is grounds for disbarment. In this case the only reason we can discern for plaintiff's counsel taking such actions is an attempt to extort a settlement, perhaps to the extent of attempting to deprive defendants Havelock and Strachan of the earned fee and expenses incurred in the Pace litigation. The undersigned believes that it is appropriate that the proceedings in this case be referred to the California Bar Association to take appropriate action.

Further, in his affidavit in support of this motion, Strachan stated: "It was my job to point out the fallacy of the argument and the trustee's misrepresentation of the statute to the court and have personal knowledge that no stay was entered."

On March 14, 1991, the trustee's counsel called Appellant, Strachan, regarding Appellants' request for release of the settlement proceeds. During this telephone conversation, Strachan threatened that if the trustee's counsel continued to prosecute the bankruptcy estate's claim to the settlement proceeds and seek damages for violation of the automatic stay, then counsel would be exposing himself to personal liability. In his letter, dated March 14, 1991, confirming his conversation with the counsel, Strachan repeated his threats.[7]

In another letter, dated March 15, 1991, Appellants conveyed further threats and insults to the trustee's counsel [8].

*I suggest you take a close reading of my Motion to Dismiss and the remedy we are seeking from the California court. Be assured I am absolutely serious in what I intend to do absent some immediate remedial actions on your part.*

Sincerely,
(signed)
John R. Strachan

(emphasis added).

7. In this letter, Strachan stated:

Dear Mr. Norton:

This letter will confirm your telephone conversation to me today.

In that conversation you told me that the LeMai contract of employment was in violation of the automatic stay, and that any release of funds would be a further violation of the automatic stay. You further threatened me personally with an amended complaint for damages and punitive damages for violation of [the] automatic stay. The reason for the call was your receipt of our motion for release of funds which you, for some unknown reason, thought was inappropriate.

I informed you that in my opinion we are entitled to be repaid our expenses and we are entitled to be paid for our work. Anything you may be entitled to would follow from whatever Jeri LeMai might be entitled to. I personally consider your claim against her frivolous and am impressed by the fact that you did not think it was worth $120.00 investment in a filing fee.

*I suggest that before you increase your exposure that you remember you have raised the phony issue of an automatic stay before the Anchorage Superior Court and Judge Hunt rejected it.* If you had a problem with that decision you should have taken some steps but it is an issue you have lost and I believe now the time to appeal it has expired.

8. In that letter Strachan stated:

Dear Mr. Norton:

By this time you should have received our Motion to dismiss together with the Affidavits and copies of the documents that support it. It has occurred to me that there is a possibility that you were duped into taking the position you have by the attorneys for the Insurance Company, Mr. Thomas and Mr. Silvey. The possibility exists, I suppose, that they did not provide you with all of the documentation that ought to have been made available to you so you would be aware of the weakness of the legal position taken. That suggests the possibility that the temptation of a free lunch outweighed the natural caution of a prudent attorney.

Assuming that was the case, it is no longer the case as you now have most of the key documents. (Mr. Havelock and Ms. LeMai may have some additional surprises for you.) The point being that there is no further excuse

The Appellants did not cease in their efforts to seize the settlement proceeds from the trustees before the bankruptcy court could determine the ownership of the settlement proceeds. Appellants attempted yet another method to gain control of the proceeds. On December 6, 1991, Appellants filed a Motion to Allocate Recovery with the Alaska Superior Court requesting that court to: (1) allocate the settlement proceeds between post-petition and pre-petition damages; (2) order the case reopened for purposes of determining allocation by jury; or (3) dissolve the settlement agreement. The trustees opposed Appellants' motion which the Alaska Superior Court denied.

On June 9, 1992, the bankruptcy court granted summary judgment in favor of the LeMai trustee on his complaint for attorneys' fees, costs and for declaratory and injunctive relief. The order held that the proceeds of a state court malpractice action were indeed property of the estate, and that Appellants did violate the automatic stay by their actions in prosecuting the actions and attempting to exercise control over the proceeds. The court awarded damages in the form of costs and attorneys' fees for these violations of the automatic stay against the debtor and Appellants. We AFFIRM.

## II. ISSUES

1. Whether the Alaska malpractice cause of action was property of the debtor's estate protected by the automatic stay after the close of the case.

2. Whether the acts committed by the debtor's attorneys including prosecution of the underlying claims, attempting to take control of the proceeds, and other acts to obtain, were violative of the stay.

3. Whether the award of attorneys' fees and costs is appropriate.

4. Whether the trustee is an "individual" entitled to recover damages, attorneys' fees and costs for a willful violation of the automatic stay.

## III. STANDARD OF REVIEW

We review findings of fact under the clearly erroneous standard while conclusions of law are reviewed *de novo*. *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989); *In re Probasco*, 839 F.2d 1352, 1353–54 (9th Cir.1988); *In re Wheeler Technology, Inc.*, 139 B.R. 235, 238 (9th Cir. BAP 1992).

■ A bankruptcy court's award of attorneys' fees under § 362(h) will not be disturbed absent an abuse of discretion or an erroneous application of the law. *In re Bradford*, 112 B.R. 347, 351 (9th Cir. BAP 1990). "Under the abuse of discretion standard, a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.*

## IV. DISCUSSION

The debtor LeMai's attempt to conceal the lawsuit from her bankruptcy estate is clearly a gross abuse of the bankruptcy system, but this is not what is at issue in this appeal. What is at issue is whether the attorneys' conduct violated the automatic stay. LeMai's actions pale in comparison to the abusive conduct of the attorneys, Appellants Strachan and Havelock. From the facts as a whole, it is apparent that what this case is about is an attempt to hide the existence of the lawsuit from the trustee and the bankruptcy court in

for your persisting in pursuing what I believe to be an entirely frivolous action as I have previously outlined in my Motion to Dismiss.

On the assumption that you were mislead, I am prepared to let the matter drop on receipt of notice of dismissal of your claim and a withdrawal of any claim to funds and such other documents as is necessary to conclude the matter provided those documents are re-ceived in my office prior to the close of business on March 20, 1991, Anchorage time. After that time I will have to assume that you did not act in ignorance.

I suggest the next time someone offers you a free lunch you ask to see the menu.

Sincerely,
(signed)
John R. Strachan

order to keep the proceeds for LeMaí and Pace and their attorneys.

Their conduct involved:

1. Knowingly concealing the assets of the estate;

2. Prosecuting the malpractice claim without the permission of the trustees;

3. Preventing the substitution of the LeMai trustee into the state lawsuit when the trustee is a legitimate party in interest;

4. Misleading the state court as to bankruptcy law;

5. Refusing to relinquish proceeds to the LeMai trustee;

6. Attempting to take proceeds in contravention of the settlement agreement in violation of the automatic stay;

7. Attempting to circumvent the jurisdiction of the bankruptcy court by means of a motion to allocate recovery;

8. Harassing the trustee's counsel with threats of sanctions and disbarment.

A. *Appellants' actions willfully violated the automatic stay.*

Appellants argue that their conduct after the LeMai bankruptcy case was closed did not violate the automatic stay because the stay was terminated upon the close of the bankruptcy case, pursuant to § 362(c)(2). They further argue that the automatic stay was not reinstated upon the reopening of the bankruptcy case. Both arguments are without merit. Appellants do not contest that the violation was willful if it is found that the stay was violated.[9]

1. *The debtor's lawsuit was property of the estate and remained property of the estate after the closing of the bankruptcy case.*

■ At the time of the filing of LeMai's petition for bankruptcy, LeMai held an interest in the pending Alaska lawsuit and a claim for legal malpractice against her former attorneys. However, LeMai did not disclose her claim for legal malpractice

against her former attorneys, nor did she disclose her interest in the pending Alaska lawsuit on her Statement Of Financial Affairs and Schedule Of Assets And Liabilities filed with the bankruptcy court as part of her bankruptcy petition. Consequently, the trustee believed the estate had no assets and caused the case to be closed.

■ The commencement of a bankruptcy case creates an estate comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). A cause of action, such as LeMai's state court malpractice claim, falls squarely within § 541 and is property of the bankruptcy estate. "The scope of § 541 is broad, and includes causes of action." *Sierra Switchboard Co. v. Westinghouse Electric Corp.*, 789 F.2d 705, 707 (9th Cir. 1986). Further, all proceeds that flow from property of the estate fall within § 541 and are also property of the estate: "[P]roceeds, product, offspring, rents, or profits" are property of the bankruptcy estate. § 541(a)(6).

Appellants suggest that the unlisted lawsuit is, or has been, abandoned by the trustee and that the closing of the case indicates that somehow no stay is applicable to this property. We cannot agree. It is only *scheduled* assets not administered during the case that are considered abandoned at the close of the case. That section reads:

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

11 U.S.C. § 554(c). However, § 554(c) does not apply in the instant case because the Alaska lawsuit was not listed in LeMai's schedules. The facts of this case fall within § 554(d). That section reads:

---

9. "Appellants do not dispute that, if there was [sic] a violation of the automatic stay, it was

willful...." (Appellants' Brief, p. 1, n. 1.)

(d) Unless the court orders otherwise, property of the estate that is not abandoned ... and that is not administered in the case remains property of the estate.

11 U.S.C. § 554(d). Unscheduled assets have not been "abandoned" or "administered." *Stein v. United Artists Corp.,* 691 F.2d 885, 890 (9th Cir.1982); *Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524, 526 (8th Cir.1991); *In re Auto West, Inc.,* 43 B.R. 761, 764 (D.Utah 1984); *In re Harris,* 32 B.R. 125, 127 (Bankr.S.D.Fla. 1983); *In re Medley,* 29 B.R. 84, 86–87 (Bankr.M.D.Tenn.1983); *In re Benefield,* 102 B.R. 157, 159 (Bankr.E.D.Ark.1989) (citing 4 *Collier on Bankruptcy,* ¶ 554.03, ¶ 554.11 to 554.12 (15th ed. 1989)). The argument that an unscheduled malpractice cause of action is abandoned by the trustee was previously rejected by the BAP in another appeal involving the debtor's former husband, H. Russell Pace, in *In re Pace,* 146 B.R. 562, 566 (9th Cir. BAP 1992).

In *Stein v. United Artists, supra,* the debtor failed to list in the bankruptcy case a cause of action it held against several third parties for antitrust violations. After the bankruptcy case was closed and the debtor received a discharge, the debtor's assignees filed a complaint asserting the antitrust claims omitted from the schedules in the bankruptcy proceeding. The Ninth Circuit concluded that the trustee is vested with title to all of the debtor's property at the time the petition is filed and the debtor may only assert title to assets that have been "abandoned" by the trustee or "administered" by the trustee with the intent to revest in the debtor. *Id.* at 890. Further, unless property is abandoned or intentionally revested, title remains in the trustee. *Id.* The court stated that when the debtor "fails to list an asset, he cannot claim abandonment because the trustee has had no opportunity to pursue the claim." *Id.* at 891. Accordingly, parties asserting title to unlisted causes of action cannot enforce such claims because they cannot demonstrate abandonment by the trustee. *Id.* Therefore, the court in *Stein* concluded that the debtor did not have title to pursue the causes of action after discharge in bankruptcy. *Id.* The causes of action

remained property of the estate because they were not listed in the bankruptcy schedules and thus were not abandoned by the estate. *Id.*

Similarly, in *In re Benefield,* 102 B.R. 157 (Bankr.E.D.Ark.1989), the debtor failed to disclose his interest in certain real property. After discharge the trustee discovered the debtor's interest in the real property and reopened the case. The court concluded that the debtor's interest in the property became property of the estate when the petition was filed despite the fact that the debtor's interest was undisclosed in his schedules and the trustee was unaware of its existence until after the case was closed. *Id.* at 158–59. Further, the court held that "the property in question was never scheduled, and therefore, it remained property of the estate after the case was closed." *Id.* at 159.

In the case before us, as in *Stein* and *Benefield,* the estate's interest in the claim for legal malpractice was neither administered nor abandoned at the time of the closing of the case because the property was completely omitted from the debtor's Statement Of Financial Affairs and Schedule Of Assets And Liabilities filed with the court. We therefore hold that the undisclosed claim for legal malpractice, and resulting settlement proceeds, remained, and continue to remain, property of the estate after the debtor was discharged and the case was closed. Accordingly, the stay prohibiting acts to obtain possession of the legal malpractice claims and the resulting settlement proceeds have been in effect without interruption since the date of the petition and shall continue until the property is administered by the trustee.

**2.** *Appellants' acts against property of the estate were stayed.*

■ Appellants fail to cite to this Panel the correct sections of the Bankruptcy Code. Under § 362(a)(3) the automatic stay applies to:

(3) any act to obtain possession of property of the estate or of property from the

estate or to exercise control over property of the estate; . . .

11 U.S.C. § 362(a)(3). Further, the duration of the automatic stay is expressly set forth in § 362(c) which states as follows:

(c) Except as provided in subsections (d), (e) and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate[.]

■ It is clear then, the automatic stay prohibiting acts against property of the estate continues until such property is no longer property of the estate. § 362(c)(1). Therefore, acts to possess or exercise control over the lawsuit for malpractice, including the continued prosecution of the lawsuit, and attempts to direct or control the proceeds of the settlement therefrom, were in clear violation of the automatic stay. Accordingly, Appellants' conduct continued to be stayed because the lawsuit remained property of the estate despite the closing of the case, as stated *supra*.

Appellants incorrectly assert that the automatic stay was terminated at the time the debtor was discharged pursuant to § 362(c)(2). Appellants ignore the fact that § 362(c)(2) applies to "the stay of any other act," i.e., acts against the debtor or the debtor's property, and does not apply to violations involving property of the estate.

We hold that the bankruptcy court was correct in finding that the automatic stay applies to the Alaska lawsuit which was and remains to be property of the estate.

3. *Appellants' argument that the stay was not reinstated by the re-opening of the bankruptcy case is irrelevant.*

■ As explained *supra*, § 554 states that property that is not abandoned or administered remains property of the estate. Appellants cite *In re Trevino*, 78 B.R. 29 (Bankr.M.D.Pa.1987), in support of their argument that they did not violate the automatic stay because the stay was not reinstated after the bankruptcy case was re-opened. As stated above, the stay of acts against "unscheduled" property of the

bankruptcy estate does not terminate upon the closing of the bankruptcy case. Consequently, reinstatement of the stay was unnecessary. Whether a stay is or is not reinstated upon the re-opening of the case is wholly irrelevant with respect to the Alaska lawsuit. Actions to control this property are stayed pursuant to § 362(c)(1).

B. *The bankruptcy court did not err in awarding the trustee attorneys' fees in prosecuting the adversary proceeding.*

1. *The trustee is entitled to recover attorneys' fees and costs in prosecuting the adversary proceeding under § 362(h) where willful violations of the automatic stay are found.*

Appellants argue that the trustee is not entitled to the reimbursement of attorneys' fees and costs in prosecuting the adversary proceeding. We do not agree.

■ An award of attorneys' fees is appropriate "where a debtor must resort to the Court to enforce his or her rights in consequence of a violation of the automatic stay." *In re Stucka*, 77 B.R. 777, 784 (Bankr.C.D.Cal.1987). Accordingly, it is well established that the attorneys' fees and costs incurred in prosecuting an adversary proceeding seeking damages arising from a violation of the automatic stay is recoverable under § 362(h). *In re Stainton*, 139 B.R. 232, 234 (9th Cir. BAP 1992); *In re Bradford*, 112 B.R. 347, 354 (9th Cir. BAP 1990). As one court stated:

The whole point of the § 362(h) provision is to discourage violations of the automatic stay by appropriate sanctions—and litigation to determine and enforce the sanctions is necessarily implied. This court accordingly believes it appropriate to award damages for the violation of the automatic stay and to make an appropriate award of the attorneys' fees necessary to remedy that stay violation.

*In re Joslyn*, 75 B.R. 590, 593 (Bankr. D.N.H.1987). Section 362(h) reads as follows:

(h) An individual injured by any willful violation of a stay provided by this sec-

tion shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). "By using the words 'shall recover,' Congress intended that the award of actual damages, costs and attorneys' fees is mandatory and not within the discretion of the Court." *In re Sansone*, 99 B.R. 981, 987 (Bankr.C.D.Cal.1989) (citations omitted). Consequently, an award of damages, costs and attorneys' fees is mandatory upon a finding of a "willful violation of the stay." *In re Taylor*, 884 F.2d 478, 483 (9th Cir.1989).

■ Additionally, an award of attorneys' fees "is appropriate where an initial violation of the stay is followed by [the aggrieved party] having to resort to the courts to enforce his rights." *In re Sansone*, 99 B.R. at 987. Section 362(h) provides that an aggrieved party shall recover "actual damages," including attorneys' fees and costs. Attorneys' fees incurred as a result of a violation of the automatic stay are "actual damages." *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989).

■ The Ninth Circuit has determined that a showing of bad faith or harassment is not required for a finding of a willful violation of the automatic stay or for an award of attorneys' fees under § 362(h). *Bloom*, 875 F.2d at 227. The meaning of "willful" as it is used in § 362(h) has been defined as follows:

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

*Bloom*, 875 F.2d at 227 (citation omitted). Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay provided under § 362. *In re Zartun*, 30 B.R. 543, 546 (9th Cir. BAP 1983). "[W]hether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded." *Bloom*, 875 F.2d at 227.

■ Additionally, a party's violation of the stay may be willful even if he believed himself justified in taking an action found to be violative of the automatic stay. *In re Cinematronics, Inc.*, 111 B.R. 892, 900 (Bankr.S.D.Cal.1990). "Not even a 'good faith' mistake of law or a 'legitimate dispute' as to legal rights relieve a willful violator of the consequences of the act." *Sansone*, 99 B.R. at 987. A party takes a calculated risk when it undertakes to make its own determination of what the stay means. *In re Gray*, 97 B.R. 930, 936 (Bankr.N.D.Ill.1989). Where "the automatic stay is concerned, it is far better to be a 'timid soul' who seeks a court determination of the limits of the stay, rather than to fail 'while daring greatly.'" *Cinematronics*, 111 B.R. at 900. As stated before, Appellants do not contest that the violation was willful if it is found that the stay was violated.

■ Appellants argue that the court in *Cinematronics* held that the trustee was not entitled to receive reimbursement of his attorneys' fees and costs in prosecuting his action for violation of the automatic stay from the defendants. In support of their argument, Appellants misrepresent the holding of *Cinematronics* and take language from that case out of context to support their argument.[10]

This discussion by the *Cinematronics* court pertained to part of the adversary proceeding which did not involve an action for damages resulting from a violation of the automatic stay. The court's holding that the trustee was not entitled to reim-

---

10. Appellants cite the following language from the *Cinematronics* case:

the court concludes that the trustee may not, in this action, claim attorneys' fees incurred in litigating the counterclaims filed by ESR in adversary proceeding C85–0958–H11 also pending in this court (the "C–85 adversary proceeding").... This court concludes that any attorneys' fees incurred by the trustee in litigating the C85 adversary proceeding must derive from the causes of action in the counter-claim and not by reason of ESR's violation of the automatic stay on October 31, 1985. *Id.* at 899.

bursement of his attorneys' fees applied to the counterclaims against the trustee alleging, *inter alia,* causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, unfair business practices, and misappropriation of trade secrets. "[T]he C–85 adversary proceeding did not include any claims for damages for violation of the automatic stay...." *Id.* at 902. The second action was a separate adversary proceeding filed by the trustee against the defendants for compensatory and punitive damages arising from their violation of the automatic stay which were indeed allowed. *Id.*

Unlike *Cinematronics,* § 362(h) is applicable to this adversary action for damages arising from the violation of the automatic stay.

### 2. *Appellants misstate the law regarding the recovery of fees.*

■ Appellants argue that the award of attorneys' fees in the instant adversary proceeding is "clearly contrary to the established rule in this Circuit that, in the absence of bad faith or harassment, attorneys' fees are not awarded in connection with the litigation of issues of federal bankruptcy law." Appellants rely on several cases in support of their argument that the trustee is not entitled to an award of attorneys' fees in determining federal bankruptcy issues without a showing of bad faith or harassment: *In re Fobian,* 951 F.2d 1149 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3031, 120 L.Ed.2d 902 (1992); *In re Coast Trading Co., Inc.,* 744 F.2d 686 (9th Cir.1984); *In re Fulwiler,* 624 F.2d 908 (9th Cir.1980); *In re Johnson,* 756 F.2d 738 (9th Cir.), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

As this Panel has recently stated in *In re Alpine Group, Inc.,* 151 B.R. 931 (9th Cir. BAP 1993), these cases merely restate what is known as the American rule, that in the absence of a specific statute awarding attorneys' fees, each party bears its own costs in litigation. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Where there is a specific bankrupt-

cy code section specifically allowing for attorneys' fees, the fees are allowed. *Alpine Group,* 151 B.R. at 934.

Here, there is a specific provision in the bankruptcy code that allows for the payment of attorneys' fees. The LeMai trustee was awarded his attorneys' fees and costs resulting from Appellants' violation of the automatic stay pursuant to a federal statute, § 362(h). The award of attorneys' fees and costs is expressly authorized by § 362(h), which grants attorneys' fees and costs to individuals injured by a willful violation of the automatic stay.

### 3. *Appellants' conduct constituted acts in violation of the automatic stay.*

■ Here, the LeMai trustee brought an action against Havelock and Strachan for damages, including reimbursement of his attorneys' fees and costs pursuant to § 362(h). The automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3).

Clearly, the conduct of Appellants, *inter alia,* in continuing to prosecute the Alaska lawsuit, refusing to relinquish proceeds to the LeMai trustee, attempting to take control of the proceeds in contravention of settlement agreement, and attempting to allocate the recovery, were all either acts of control over the Alaska lawsuit or acts to obtain possession of the proceeds which are property of the estate. All were willful acts in violation of the automatic stay which required the LeMai trustee to seek vindication in the bankruptcy court.

The trial court stated that the Appellants' failure to come to the court for authorization to proceed caused the LeMai trustee to take the actions for which he incurred attorneys' fees and costs. The court explained the consequences of Appellants' conduct in proceeding against the property of the estate without court authorization and stated the following:

> Instead, they took it upon themselves to conclude that it wasn't (property of the estate) and to proceed accordingly be-

cause they did not come here, and the cardinal rule is if you have a doubt, you ask permission because begging forgiveness does not cut it when you're talking about a 362(h) violation. You do it at your peril.

\*    \*    \*    \*    \*    \*

The 362(h) issue, in this court's view, is very clear and that is that come February of '91 when they got the call that said hold it, this is property of the estate, the [estate is] reopened, that's where we are, they've got to freeze in their tracks until they've got [sic] authority to go further and they didn't do that.

(Transcript of February 26, 1992 Hearing). We agree. The bankruptcy court was correct in awarding costs and fees against Appellants for violation of the automatic stay.

4. *The trustee is an "individual" and is entitled to recover damages pursuant to § 362(h).*

Section 362(h) states:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages....

Appellants argue that the remedies afforded by § 362(h) are limited to "individuals" and that the reference to the word "individuals" is strictly defined as "natural persons." Appellants further argue that trustees act in their capacity as representatives of the estate and are not "natural persons," thus not entitled to recover damages, including attorneys' fees and costs,

for violations of the automatic stay.[11] We disagree.

The Ninth Circuit in *In re Goodman,* 991 F.2d 613, (9th Cir.1993), held that the term "individual," as used in § 362(h), is not broad enough to include a corporation or other artificial entity. *Id.* at 619–20. The Ninth Circuit adopted the analysis of the Second Circuit in *In re Chateaugay Corp.,* 920 F.2d 183 (2nd Cir.1990), reading the word "individual" in its plain meaning as not inclusive of a corporation. The Ninth Circuit rejected the view that the word "individual" was tantamount to "person" which is defined by the Code. The Code defines "person" to include an "individual, partnership and corporation...." 11 U.S.C. § 101(41).

Despite the guidance provided by the Ninth Circuit, *Goodman* does not squarely address the question faced here. The trustee in this case is not a corporation or partnership. The trustee is unquestionably an individual. Simply because the trustee is the representative of the estate does not make him any less an individual for purposes of § 362(h). It is not just the estate that may be injured by the violations of the stay, but the trustee himself. The trustee in this case was in fact injured by the acts of Havelock and Strachan in that they repeatedly interfered with the performance of the trustee's duties under § 704, which include collecting and reducing the property of the estate to money. The injury is the costs incurred in seeking redress from the bankruptcy court to rectify the repeated violations of the automatic stay. The sanctions were ordered by the court to

---

**11.** The interpretation of "individual" as used in § 362(h) has been the subject of debate. The Second Circuit held that the remedies available under § 362(h) are solely available to "natural persons." *In re Chateaugay Corp.,* 920 F.2d 183, 186–87 (2nd Cir.1990); *In re Prairie Trunk Railway,* 125 B.R. 217, 221 (Bankr.N.D.Ill.1991); *In re First RepublicBank Corp.,* 113 B.R. 277, 279 (Bankr.N.D.Tex.1989). The Ninth Circuit, adopting the statutory analysis of the Second Circuit, has held that a corporation does not fall within the meaning of "individual" as in § 362(h). *In re Goodman,* 991 F.2d 613, 619 (9th Cir.1993).

The Third and Fourth Circuits have followed the view that the remedies under § 362(h) are

available to all debtors, whether a natural person, corporation or partnership. *In re Atlantic Business and Community Corp.,* 901 F.2d 325, 329 (3rd Cir.1990); *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292 (4th Cir.1986); *In re Mallard Pond Partners,* 113 B.R. 420, 423 (Bankr.W.D.Tenn.1990); *In re Schewe,* 94 B.R. 938, 948 (Bankr.W.D.Mich.1989); *In re Tel–A–Communications Consultants, Inc.,* 50 B.R. 250, 254 (Bankr.D.Conn.1985); *In re Jim Nolker Chevrolet–Buick–Oldsmobile, Inc.,* 121 B.R. 20, 22 (Bankr.W.D.Mo.1990); *In re Nash Phillips/Copus, Inc.,* 78 B.R. 798, 803 (Bankr. W.D.Tex.1987); *In re NWFX, Inc.,* 81 B.R. 500, 503 (Bankr.W.D.Ark.1987).

be paid to the trustee to compensate him for his efforts.[12] We hold the remedies afforded by § 362(h) are available to the trustee in the instant appeal because the trustee is an individual.

We acknowledge the argument that the trustee, although personally an individual, acts in his capacity as trustee on behalf of the estate which is an artificial entity, and not an individual. The Code, however, makes no distinction as to an individual in his individual capacity, or an individual acting on behalf of the estate. We decline to create such a distinction. If such a distinction were made, then in theory, no estate could ever recover under § 362(h), because the estate, of course, is not an "individual." Perhaps only a debtor would be able to recover under this section. It is unlikely that Congress intended such a result. Obviously, as in this case, where the debtor is a part of the scheme to hide assets, the debtor as an individual is not likely to bring an action under § 362(h).

5. *An award of damages is appropriate under § 105 irrespective of the applicability of § 362(h).*

Even if it were true that § 362(h) were not applicable to a trustee, the bankruptcy court still has power to award sanctions pursuant to other sections of the Code, such as § 105. *In re Skinner*, 917 F.2d 444 (10th Cir.1990) (even if the facts do not support imposition of sanctions under § 362(h), § 105(a) may permit sanctions for violations of the automatic stay); *In re Goodman*, 991 F.2d 613, 620 (9th Cir.1993). As the Ninth Circuit noted in *Goodman*, the inquiry does not end with § 362(h). *See Goodman* 991 F.2d at 620. Enactment of § 362(h) does not preclude an award of sanctions under other sections of the Code; it merely makes the award for violating the stay mandatory in the case of an individual, while an award under § 105(a) for non-individuals remains in the discretion of the court. *Id.* Prior to the enactment of § 362(h) in 1984, courts regularly awarded sanctions for violations of § 362. *Id.* We also note that there is nothing in the legislative history of § 362(h) to suggest that Congress intended to change the state of the law to restrict the award of sanctions to § 362(h).

Although the court in *Goodman*, as well as cases before the enactment of § 362(h), refer in common parlance to "contempt" for violation of the automatic stay, what is clearly meant is sanctionable conduct. Prior to the decision of *In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281 (9th Cir.1987), this distinction was of no significant import. The term "contempt," more accurately described as "contempt of court," refers to a violation of a court order or an affront to the dignity of a court.[13] The automatic stay is not a court order, it is a legislative mandate. A violation of the stay, therefore, is not a violation of a court order, but in essence a violation of the legislative mandate of Congress, not punishable by contempt but nevertheless sanctionable conduct. While *Sequoia* questions the power of a bankruptcy court to issue contempt orders, there is no question of a bankruptcy court's power to award sanctions. *See e.g.*, Rules 9011, 7026, 7037.

This case clearly warrants the granting of sanctions. Upon the egregious facts of this case, and from extensive review of the trial court record, there can be little doubt that the trial court's intention was to award sanctions for violating the automatic stay, whether under § 362(h) or § 105. It is absolutely clear to this Panel that the trial court felt outrage over the actions of

---

12. The order provided in pertinent part:

Accordingly, the award of fees to be paid to the Trustee by the co-defendants shall be in the amount of $40,433.70. The costs requested by the Trustee in the amount of $2,657.13 are further ordered to be paid by co-defendants. Both such amounts are to be paid by the co-defendants to the Trustee immediately. (July 29, 1992 Court Order, Page 7)

13. Civil contempt is a refusal to do an act the court has ordered for the benefit of a party; the sentence is remedial. Criminal contempt is a completed act of disobedience; the sentence is punitive to vindicate the authority of the court. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911); *In re Sequoia Auto Brokers Ltd., Inc.*, 827 F.2d 1281, 1283 (9th Cir.1987).

Appellants Havelock and Strachan in violating the stay. A remand for findings to this effect would be superfluous.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court was correct in awarding costs and attorneys' fees for the Appellants' willful violations of the automatic stay pursuant to § 362(h). Accordingly, we AFFIRM.

Due to the egregious conduct displayed by the Appellants in this case, we will forward a copy of this opinion to the Alaska State Bar for their consideration. And because knowing and fraudulent concealment of property of the estate is a bankruptcy crime under 18 U.S.C. § 152, we will also forward this opinion to the Offices of the U.S. Attorney for the District of Alaska and the Southern District of California for their consideration. This opinion shall be forwarded to the Alaska State Bar and the Offices of the United States Attorney at the time when the Clerk of this Panel issues its mandate.

OLLASON, Bankruptcy Judge, concurring:

I join in the majority opinion except as to the discussion of the trustee being an individual; thus, I join with Judge Jellen's concurrence as to Part I only.

JELLEN, Bankruptcy Judge, with whom OLLASON, Bankruptcy Judge, joins as to Part I, concurring:

### I.

▮ I concur with the result, but write separately because I disagree with the holding that Harold S. Taxel, trustee in

bankruptcy, was an "individual" within the meaning of Bankruptcy Code section 362(h).

We know from *In re Goodman*, 991 F.2d 613, 619 (9th Cir.1993) that only an "individual" may recover damages pursuant to section 362(h). We also know that the damage here was suffered by the debtor's bankruptcy estate. (Mr. Taxel in his individual capacity was not a party to the adversary proceeding and is not a party to this appeal.) Thus, the question, simply, is whether a bankruptcy estate should be considered an "individual" merely because its representative, the trustee in bankruptcy, is an individual. I believe not.

Section 541(a) provides that the commencement of a bankruptcy case "creates an estate." Section 323(a) provides that "The trustee in a case under this title is the representative of the estate." Under the Bankruptcy Code, then, the trustee is not an individual; the trustee is a representative of an entity created thereunder, to wit, the estate.[14] This important distinction is unequivocally demonstrated in this case by the fact that the bankruptcy court awarded the $43,090.83 as damages to the estate and not to Harold S. Taxel for his individual account.

Moreover, throughout the Bankruptcy Code, Congress uses the term "individual" to refer to the real party in interest rather than the representative of the real party in interest.[15] As one example among many, it is beyond dispute that estates and trusts (other than business trusts that qualify under section 101(9) as corporations) are ineligible for relief under any chapter of the Bankruptcy Code.[16] This is clear from sec-

---

**14.** Section 101(15) provides that "'entity' includes person, estate, trust, governmental unit, and United States trustee." Therefore, an estate is an "entity."

**15.** "Under the rules of statutory construction, identical words that are used in different parts of the same act are intended to have the same meaning." *In re Shaw*, 157 B.R. 151, 153 (9th Cir. BAP 1993) (citations omitted). Apparently contra, *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

**16.** *See, e.g., In re Goerg*, 844 F.2d 1562, 1565–66 (11th Cir.1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989) (decedents' estates ineligible for relief under the Bankruptcy Code); *In re Estate of Whiteside by Whiteside*, 64 B.R. 99, 101 (Bankr.E.D.Cal.1986) (probate estate ineligible for relief); *In re Johnson*, 82 B.R. 618 (Bankr.S.D.Fla.1988) (family trust ineligible for relief); *In re St. Augustine Trust*, 109 B.R. 494 (Bankr.M.D.Fla.1990) (family trust ineligible for relief); *In re BKC Realty Trust*, 125 B.R. 65 (Bankr.D.N.H.1991) (non-business trust ineligible for relief).

tion 109(a), which provides that "only a person ... or a municipality ... may be a debtor under this title," and section 101(41), which provides that " 'person' includes individual, partnership, and corporation," thereby excluding estates and non-business trusts.[17] Under the above construction, however, testamentary and *inter vivos* trusts would be eligible for relief whenever the representative of the trust, its trustee, is an individual. A decedent's estate would also be eligible if it is represented by an executor or administrator who is an individual.

By the same construction, trusts and decedents' estates represented by an individual fiduciary would not only be eligible for relief under the Bankruptcy Code, they would also qualify to claim exemptions pursuant to section 522(b)(1), file Chapter 13 cases pursuant to section 109(e), and obtain Chapter 7 discharges pursuant to section 727(a), rights that are available only to "individuals."[18] Corporations and partnerships would also enjoy an expanded array of rights (e.g., eligibility to file Chapter 13 and claim exemptions) in cases where they are represented by a fiduciary who is an individual—a prepetition receiver, for example.

Even if we were to focus only on section 362(h), it would still be apparent that the term "individual" was intended to refer to a natural person injured by a stay relief violation and not to the representative of that person. This is so because under section 321(a), both corporations and individuals are eligible to serve as a trustee in bankruptcy. Yet no logical reason presents itself why Congress would require that damages be awarded to an injured

bankruptcy estate that is represented by an individual trustee but not require that damages be awarded to an identical bankruptcy estate suffering identical injury, merely because it is represented by a corporate trustee. Indeed, although substantive provisions concerning bankruptcy trustees, bankruptcy estates, and property of the estate appear throughout the Bankruptcy Code, not one of these provisions sets forth different rights or duties for, or distinguishes between, corporate and individual trustees or the estates that they represent. Section 362(h) should be no different.

## II.

Although a trustee is not an "individual" for purposes of section 362(h), I concur in the result because I agree that section 105(a) authorizes bankruptcy judges to impose sanctions. I believe that some elaboration is required, however, because of the holding of *In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281 (9th Cir.1987) that section 105(a) does not confer contempt power on bankruptcy judges.

In *Sequoia*, the bankruptcy court issued a civil contempt order under which the debtor was to be imprisoned until the debtor complied with the bankruptcy court's order to file a statement of affairs, schedules, master mailing list, and other documents. After rejecting the arguments that the bankruptcy court had the inherent authority or the implied statutory authority to enter an order of civil contempt, *see id.* at 1284–99, the *Sequoia* court considered whether section 105(a) was a source of contempt authority. The court concluded in the negative, reasoning that if section

---

**17.** The legislative history for section 101(41), defining "person," states: "The definition does not include an estate or a trust, which are included only in the definition of 'entity' in proposed 11 U.S.C. § 101(14) [now, § 101(15)]." H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 313, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6270.

**18.** Under section 522(b)(1), "an individual may exempt ... property of the estate." Under section 109(e) "[o]nly an individual with regular income," defined in section 101(3) as an "individual whose income is sufficiently stable and regular," may file a Chapter 13 case. Under

section 727(a)(1), a debtor is not entitled to a discharge if "the debtor is not an individual." See also sections 101(18) and 109(f), under which eligibility for Chapter 12 as a "family farmer" can depend on whether the debtor is an "individual." In each of these cases, "individual" refers to the natural person who is the real party in interest and not to a representative. A contrary construction would lead to anomalous results at odds with well established Bankruptcy Code principles, and would violate the rule of statutory construction cited in footnote 15, *supra.*

105(a) were a source of contempt authority, it would be authority without limitations of the type that Congress has historically placed on other Article I courts, and that bankruptcy judges' resulting contempt authority would even be broader than that of Article III courts. *Id.* at 1290.

The foregoing rationale does not apply in cases such as that presented here, where:

1.  The sanctions were imposed for a statutory violation, not a violation of a court order;

2.  The sanctions were monetary;

3.  The sanctions were imposed to compensate, and not to punish or coerce;

4.  The sanctions imposed did not exceed the amount of the estate's out of pocket loss, and thus, were in the nature of actual damages;

5.  The relief sought by the estate did not involve the threat of fine or imprisonment; and

6.  The sanctions were imposed only after notice, hearing, and an opportunity for appellants to conduct discovery in accordance with Part VII of the Federal Rules of Bankruptcy Procedure.

Thus, when compensatory sanctions are at issue pursuant to section 105(a), limitations exist as to the relief that can be requested, the grounds on which relief may be granted, the procedures that must be followed, and the type of relief that can be ordered.

Consequently, I concur in the result.