In re Mark Alan ABRAMS and Peggy Rubel Abrams, Debtors.

Mark Alan ABRAMS and Peggy Rubel Abrams, Appellants,

v.

SOUTHWEST LEASING AND RENTAL INC. and Desert Recovery, Appellees.

BAP No. CC–90–1384–VOP.

Bankruptcy No. SA–89–07876–JB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 20, 1991.

Decided May 31, 1991.

**240**

Ralph G. Pagter, Santa Ana, Cal., for appellants Mark & Peggy Abrams.

Roland Ginsburg, Los Angeles, Cal., for appellees Southwest Leasing & Rental and Desert Recovery.

Before VOLINN, OLLASON and PERRIS, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

A lessor without knowledge of the debtors' bankruptcy caused the post-petition repossession of the debtors' leased automobile. The lessor received notice of the bankruptcy the day of the repossession but refused to return the vehicle. The trial court concluded that no compensable violation of the automatic stay had occurred and denied damages under § 362(h)[1] of the Bankruptcy Code. However, the court awarded the debtors damages under § 105[2] for the lessor's unlawful detention of the debtors' property despite the requirements of § 542[3]. We REVERSE and REMAND for a determination of damages under § 362(h).

## FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts are as follows:

Debtor/appellants Mark and Peggy Abrams entered into a pre-petition lease agreement with appellee Southwest Leasing and Rental, Inc. ("Southwest") under which the Abrams leased two automobiles. On December 11, 1989 the Abrams filed a petition under Chapter 7 of the Bankruptcy Code. Eleven days later, appellee Desert Recovery ("Desert"), acting as an agent for Southwest,[4] repossessed one of the automobiles. It is undisputed that neither Southwest nor Desert knew of the Abrams' bankruptcy case at that time.

The day the repossession occurred, Abrams' attorney notified Southwest by fax of the Abrams' bankruptcy and demanded that the automobile be returned. Southwest admits receiving notice of the bankruptcy that day. Four days later, the Abrams personally contacted Desert, informed it of their bankruptcy and demanded return of the repossessed automobile. The Abrams' attorney mailed written notice of the bankruptcy to Desert that same day. However, neither Desert nor Southwest ever returned the automobile to the Abrams.

On January 4, 1990 the Abrams brought this action seeking damages and attorney fees under § 362(h), alleging that appellees willfully violated the automatic stay. At a

---

1. Section 362(h) states:
   (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

2. Section 105 in relevant part provides:
   (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title....

3. Section 542, where relevant, provides as follows:

   (a) [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate....

4. Southwest and Desert are hereinafter referred to jointly as "appellees."

hearing on January 30, 1990 the trial court found that appellees had "willfully and intentionally" failed to return the repossessed vehicle after learning of the bankruptcy, and had thereby "exercised exclusive control thereof." The court concluded, however, that appellees had only "inadvertently" violated the automatic stay by the initial repossession, and that their later refusal to return the vehicle was not willful for purposes of recovery under § 362(h). The court therefore denied the Abrams' request for monetary damages.

At a March 13, 1990 hearing on the Abrams' motion for reconsideration, the court further found that neither Southwest nor Desert took any measures within a reasonable time to return the repossessed vehicle after receiving notice of the Abrams' bankruptcy. The court concluded nevertheless that their actions did not violate the automatic stay for purposes of § 362(h). However, the court held that appellees' actions did constitute a violation of § 542 and, invoking its discretionary powers under § 105, awarded the Abrams $1,500.00 in damages for appellees' refusal to promptly comply with § 542.

The Abrams appeal from the denial of damages under 362(h).

### ISSUES

The issues on appeal are (1) whether a creditor, who causes a post-petition seizure of property of the estate without initial knowledge of the debtor's bankruptcy, violates § 362(a)(3) when it refuses to return the seized property after receiving notice of the bankruptcy; and (2) whether a "willful and intentional" refusal to return such property constitutes a "willful" violation of § 362 for purposes of damages under § 362(h).

5.  The oft-quoted legislative history of § 362 provides in pertinent part as follows:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure ac-

### STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error, *In re Torrez*, 63 B.R. 751, 753 (9th Cir.BAP 1986), *aff'd*, 827 F.2d 1299 (9th Cir.1987), and its conclusions of law *de novo*. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

### DISCUSSION

1.  *Violation of the Automatic Stay.*

■ The automatic stay is a basic protection afforded debtors under the bankruptcy laws, and its scope is intended to be broad. *In re Stringer*, 847 F.2d 549, 551–52 (9th Cir.1988); *see also* H.R.REP. No. 95–595, 95th Cong., 1st Sess. 340–41 (1977), *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5963, 6296.[5] In particular, § 362(a)(3) protects debtors from:

(3) any act to obtain possession of property of the estate or of property from the estate or to *exercise control over property of the estate....*

§ 362(a)(3) (emphasis added). The second clause of § 362(a)(3), underlined above, was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 355, to clarify that the automatic stay extends to any exercise of control over property of the estate, *Norton Bankr. Code Pamphlet* 209 (1990–91 ed.), an amendment which effectively widened the scope of the stay. *Collier's Bankr. Manual*, ¶ 362.03 at 362–19—362–20 (3d ed. 1989).

■ In contending that the bankruptcy court erred in concluding that appellees' actions did not constitute a willful violation of the automatic stay, the Abrams principally rely on *In re Knaus*, 889 F.2d 773 (8th Cir.1989). In *Knaus*, a creditor caused the pre-petition seizure of certain of the debtor's property pursuant to a writ of attachment. While the property was still in possession of the sheriff who had exe-

tions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
H.R.REP. No. 95–595, 95th Cong., 1st Sess. 340–41 (1977), *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5963, 6296.

cuted the seizure, the debtor filed a Chapter 11 petition and demanded that the creditor cause the return of the seized property. When the creditor refused, the debtor filed an action for turnover. The Eighth Circuit held that the filing of a bankruptcy petition creates a duty in creditors in possession of estate property to turn over such property. *Knaus*, 889 F.2d at 775. The court concluded that the failure to fulfill this duty constituted a prohibited attempt to " 'exercise control over property of the estate' in violation of the automatic stay." *Id.* at 775.

The trial court in this case considered *Knaus* but declined to adopt its holding, as discussed in the court's oral ruling:

> But you're asking me to apply a strict liability standard here. That if you hold any property with knowledge of the stay, which is knowledge of the bankruptcy I should say, which is enough, that that automatically makes you a willful violator of the automatic stay. That's the impact of what you're asking me to rule.
>
> .     .     .     .     .
>
> [A]t this point without knowing where this kind of reasoning could lead us, I'm having difficulty with the basic proposition that holding onto [sic] property is a violation of the automatic stay.... [M]erely to say that every time someone holds property, after they have seized it lawfully postpetition without knowledge of the bankruptcy, is liable for whatever damages flow from that, is a step that I would prefer to come from an appellate court, rather than me. And you haven't persuaded me with the *Knaus* theories, though I do see the danger.

ER p. 103, ln. 22—p. 104, ln. 2; p. 108, ln. 25—p. 109, ln. 16. As noted above, the court then awarded damages pursuant to § 105 for appellees' § 542 violation.

While *Knaus* is not controlling in this circuit, we find it persuasive for a number

of reasons. Its factual context is not materially distinguishable from that of the present case,[6] and the court's policy discussions are consistent with the fundamental purposes of the automatic stay. *Knaus* also appears to be in accord with a substantial body of case law holding that the post-petition retention of property of the estate is a violation of the automatic stay.[7] *See e.g., In re Miller,* 22 B.R. 479 (D.Md.1982), (automatic stay would be "emasculated" if duty were on debtor to seek recovery of property seized in violation of stay); *In re Holman,* 92 B.R. 764 (Bankr.S.D.Ohio 1988) (creditor's continued retention of automobile after receiving notice of bankruptcy constituted willful stay violation); *In re Carlsen,* 63 B.R. 706, 711 (Bankr.C.D. Cal.1986) (failure of I.R.S. to return funds received pursuant to levy after receiving notice of bankruptcy was "violation of *both* the automatic stay and of the turnover requirements of the Bankruptcy Code") (emphasis added).

The above cases stand for a number of propositions that are relevant to the present case. First, and primarily, the cases are representative of a general rule that a creditor's knowing retention of property of the estate constitutes a violation of the automatic stay. It is noteworthy that this result is found in cases such as *Miller* that were decided prior to the 1984 amendment to § 362(a)(3), an amendment which made it clear that post-petition control over estate property is a violation of the stay.

Second, the above decisions appear to be based in part on the proposition that § 542 provides the *right* to the return of estate property, while § 362(h) provides the *remedy* for the failure to do so. *Carlsen* expressly states that the failure to return property of the estate with knowledge of the bankruptcy is a violation of both the automatic stay and of the turnover requirements of the Bankruptcy Code. 63 B.R. at

---

**6.** The *Knaus* court found no relevant distinction between the failure to return property seized pre-petition and property seized post-petition. 889 F.2d 775.

**7.** The only case we have found that holds to the contrary is *In re Abt,* 2 B.R. 323 (Bankr.E.D.Pa.

1980). However, that case was decided prior to the amendment to § 362(a)(3) in 1984, and has been effectively overruled by subsequent cases. *See In re McLaughlin,* 96 B.R. 554 (Bankr.E.D. Pa.1989).

711. Support for this right/remedy concept is also found in the fact that the Code expresses no remedy for a violation of § 542,[8] while § 362 contains its own remedial provision. *See* § 362(h). Moreover, the remedy and sanction provided by § 362(h) are specifically applicable to the issue before us, whereas the general provisions of § 105 leave its application open to question.

A third common theme presented by these decisions is that the duty to insure the post-petition return of property of the estate lies with the entity in possession of such property, and not the debtor. A trustee or debtor-in-possession does have the ability to bring a motion to compel turnover under § 542. However, the case law and the legislative history of § 362 indicate that Congress did not intend to place the burden on the bankruptcy estate to absorb the expense of potentially multiple turnover actions, at least not without providing a means to recover damages sustained as a consequence thereof.

Finally, *Carlsen* adds a reasonableness element to the creditor's duty to turnover property of the estate, holding that such turnover must occur "within a reasonable period of time after notice of bankruptcy." 63 B.R. at 710. As noted above, the trial court was reluctant to adopt a rule it apparently believed would create absolute liability even where a creditor's violation of the stay was inadvertent. Section 362(h) clearly does not impose absolute liability for violations of the stay in view of the required element of willfulness. An analysis under § 362(h) thus would implicitly require a court to consider the factor of inadvertence, particularly where a creditor remedied the stay violation immediately upon notice of the bankruptcy.

As noted above, § 362(a)(3) prohibits, "any act ... to exercise control over property of the estate." In the present case, the trial court found that appellees had "exercised exclusive control" over the Abrams' vehicle, and neither Southwest nor

Desert took any "reasonable measures within a reasonable time" to return the vehicle after receiving notice of the bankruptcy. There is nothing to indicate that these findings are clearly erroneous, and they have not been challenged on appeal. Based on the record and the clear statutory language, we conclude that appellees' actions constituted a violation of § 362(a)(3).

2. *"Willfull" Violation.*

Section 362(h) provides a remedy for willful violations of the automatic stay as follows:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The trial court determined that appellees' actions did not constitute willful violations of the automatic stay, which determination is reviewed for clear error. *See In re Bloom*, 875 F.2d 224 (9th Cir.1989).

■ The term "willful" for purposes of § 362(h) is defined in this circuit as follows:

A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Bloom*, 875 F.2d at 227 (citation omitted). A violation of the stay is thus willful when a creditor acts intentionally with knowledge of the bankruptcy. *Accord Knaus*, 889 F.2d at 775.

In this case, the court found that Southwest knew of the Abrams' bankruptcy the day Desert repossessed the vehicle, and that appellees had "willfully and intentionally" failed to return the vehicle after learning of the bankruptcy. Appellees

---

**8.** The trial court in this case invoked its equitable powers under § 105 in awarding the

Abrams damages for appellees' § 542 violation.

again do not challenge the validity of these findings, which are supported by the record. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). The record in this case compels the conclusion that appellees' violation of the automatic stay was willful, and the Abrams are thus entitled to a determination of their compensable damages under § 362(h).

## CONCLUSION

Appellees' repossession of the debtors' automobile, while initially inadvertent, became a willful violation of the automatic stay when appellees failed to take any reasonable steps to remedy their violation upon learning of the debtors' bankruptcy. The trial court's unchallenged findings support this conclusion. We thus REVERSE and REMAND this case, and direct the trial court to consider and determine the damages recoverable by the debtors under the standards provided under § 362(h).