In re Norman R. CORDLE, Lorna S. Cordle, Debtors.

Bankruptcy No. 95–42023 TR.
R.S. No. 95–1476.

United States Bankruptcy Court, N.D. California.

Aug. 15, 1995.

Linda Sorensen, A. Todd Berman, Feldman, Waldman & Kline, San Francisco, CA, for trustee.

A. Lysa Simon, Northridge, CA, for creditor.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

The trustee of the above-captioned chapter 7 estate ("Trustee") seeks sanctions against the Farmers Insurance Credit Union ("Credit Union") for willful violation of the automatic stay. For the reasons set forth below, the motion is granted.

## SUMMARY OF FACTS

Prior to the commencement of this bankruptcy case, the debtor (the "Debtor") sold insurance pursuant to a written contract (the "Appointment Contract") with the Farmers Insurance Group of Companies ("Farmers Insurance"). The Appointment Contract provided that, if the contract were terminated, certain amounts would be paid to the Debtor.

The Debtor borrowed approximately $50,-000 from Credit Union (the "Loan"), which was affiliated with, but operated separately from, Farmers Insurance. As security for the Loan, the Debtor gave Credit Union a security interest in the Appointment Contract. Credit Union duly perfected its security interest in the Appointment Contract by filing a UCC–1 Financing Statement with the California Secretary of State's Office and by notifying Farmers Insurance of the security interest.

The Debtor commenced this bankruptcy case on March 30, 1995 by filing a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code. A few days later, without notice to the Trustee, the Debtor terminated the Appointment Contract with Farmers Insurance. He requested that the amounts due upon termination be paid to Credit Union to the extent necessary to satisfy the Loan and that the balance be paid to him. Farmers Insurance asked Credit Union for a payoff demand. In early June 1995, Farmers Insurance paid Credit Union approximately $47,000, the amount of the payoff demand. There is no evidence before the Court that Farmers Insurance knew of the Debtor's bankruptcy prior to making the payment to the Credit Union, and no wrongdoing on the part of Farmers Insurance is alleged at this time.

Credit Union admits receiving notice of the Debtor's bankruptcy prior to receiving the request for the payoff demand. However, at the hearing on the motion for sanctions, counsel for the Credit Union made an offer of proof—to which counsel for the Trustee did not object—that the request for the payoff demand did not alert it to the possibility that Farmers Insurance might be intending to pay any amount due to the Debtor to the Credit Union. Counsel represented that the Credit Union routinely received requests from Farmers Insurance for payoff demands, presumably, to enable Farmers Insurance to keep their records current. In this instance, however, after providing the payoff demand, the Credit Union received the amount of the demand.

At about this time, the Trustee learned of the Debtor's termination of the Appointment

Contract and of the monies paid to Credit Union. On June 9, 1995, counsel for the Trustee wrote to the Credit Union requesting that the Credit Union send the money received post-petition from Farmers Insurance to the Trustee. Counsel was apparently referred to the Credit Union's counsel. On June 13, 1995, counsel for the Trustee wrote to counsel for the Credit Union, memorializing a phone conversation, requesting the turnover of the money, and promising that "[t]he Credit Union's interest in the funds will not be adversely affected and will be recognized to the same extent and with the same validity and priority as if the funds had not been transferred in violation of the stay."

Counsel for the Credit Union wrote back on July 7, 1995. Her letter includes the following rationale for refusing to comply with the Trustee's turnover demand:

> ... we see no benefit to anyone nor reason to remit the proceeds to the Trustee for safekeeping. The Credit Union instead has chosen to file a Motion for Relief from Automatic Stay to clarify that it has the right to accept the proceeds.

In fact, the Credit Union had filed a motion for relief on June 26, 1995. By the time of the hearing on the motion for relief, on August 4, 1995, the Trustee was satisfied that the Credit Union's security interest was duly perfected and consented to the Credit Union's motion for relief. However, the Trustee requested a determination by the Court that the Credit Union violated the automatic stay and for sanctions in the amount of any expense to the estate as a result of the Credit Union's violation.

## DISCUSSION

■ The Trustee does not appear to contend that the Credit Union violated the automatic stay by providing Farmers Insurance with a payoff demand or by accepting the funds paid over to it post-petition by Farmers Insurance. His contention that the Credit Union violated the automatic stay appears to be based solely on the Credit Union's refusal to pay the money received post-petition to the Trustee for safekeeping pending resolution of any issues concerning the validity of Credit Union's security interest.

The principal case upon which the Trustee relies is *In re Abrams,* 127 B.R. 239 (Bankr. 9th Cir.1991). In *Abrams,* a secured creditor's agent repossessed the debtor's automobile post-petition but without knowledge of the bankruptcy. The debtor's attorney immediately informed both the secured creditor and its agent of the bankruptcy case and demanded the return of the vehicle. The vehicle was not returned. The trustee sought sanctions against the secured creditor pursuant to 11 U.S.C. § 362(h) for willful violation of the automatic stay.

The trustee contended that, by refusing to turn over the vehicle, the creditor had "exercised control" over the vehicle in violation of the stay. Since the creditor knew of the bankruptcy case when it refused to turn the vehicle over, the violation was willful. The bankruptcy court found that the violation was not willful and denied sanctions. The Bankruptcy Appellate Panel reversed and remanded for a determination of the appropriate amount of sanctions. The Panel noted that:

> ... the duty to insure the post-petition return of property of the estate lies with the entity in possession of such property, and not with the debtor. A trustee or debtor-in-possession does have the ability to bring a motion to compel turnover under § 542. However, the case law and the legislative history of § 362 indicate that Congress did not intend to place the burden on the bankruptcy estate to absorb the expense of potentially multiple turnover actions, at least not without providing a means to recover damages sustained as a consequence thereof.

*Abrams,* 127 B.R. at 243.

The Credit Union contends that *Abrams* and the other cases cited by the Trustee are distinguishable because the creditors in those cases obtained possession of the property in question through some affirmative act whereas the Credit Union simply accepted the payment. This distinction is not well taken. The *Abrams* court noted as persuasive *In re Knaus,* 889 F.2d 773 (8th Cir.1989), a case in which, after a bankruptcy case was filed, a creditor refused to turn over property of the estate seized pre-petition. The court held

the refusal to violate the automatic stay. In *Knaus*, although the property was obtained through an affirmative act, the act was not wrongful because there was no automatic stay in place at the time it occurred. *See In re Abrams*, 127 B.R. at 242, n. 6.

■ Counsel for the Credit Union contends that its refusal to turn over the money did not violate the automatic stay because it filed a motion for relief from stay within a reasonable time. Counsel contends that it would have risked losing its security interest had it turned the funds over to the trustee because the perfection of its security interest depended upon its possession of the funds. In support of this theory, counsel cites *In re Edgins*, 36 B.R. 480 (9th Cir.BAP 1984). In *Edgins*, the Bankruptcy Appellate Panel held that a bank asserting a setoff right in funds in a deposit account did not violate the automatic stay by placing an administrative freeze on the account so that the debtor could not withdraw the funds provided it sought relief from the automatic stay within a reasonable period of time.[1]

The Credit Union's argument is not persuasive. Its position is not analogous to that of a bank asserting a setoff right in funds in the debtor's deposit account at the time a bankruptcy case is filed. Despite the fact that one refers to funds being in a deposit account—as if the funds were tangible property—a positive balance in a deposit account constitutes nothing more than an obligation on the part of a bank to pay the amount previously deposited. Section 542(b) provides that:

> ... an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.* [Emphasis added.]

Thus, a bank asserting an offset claim is expressly excused from the general turnover requirement.

Unlike a bank asserting a setoff right with respect to a deposit account, by refusing *to* turn over the funds received from Farmers Insurance, the Credit Union was not declining to pay a matured debt to preserve its right of setoff. The Credit Union had actually received property of the estate post-petition from Farmers Insurance, had no right of setoff with respect to that property, and thus had no legitimate purpose in retaining the funds.

■ The Credit Union's contention that it would have lost its security interest had it turned the money over to the Trustee is unreasonable. The Credit Union had a duly perfected security interest in the Appointment Contract when the bankruptcy case was filed. The funds in question were the proceeds of that collateral, and the Credit Union's security interest continued in them. 11 U.S.C. § 552(b)(1). Moreover, the Trustee's counsel stipulated in writing that the Credit Union's rights would be preserved notwithstanding the turnover. The Credit Union's suggestion that the Trustee's stipulation that the Credit Union's legal rights would not be adversely affected by the turnover might not be binding on the Trustee is nonsensical.

■ Section 362(h) provides that an individual injured by a willful violation of the automatic stay is entitled to damages. Moreover, if 11 U.S.C. § 362(h) applies, sanctions are mandatory; a bankruptcy court does not have the discretion to decline to impose them. *In re Taylor*, 884 F.2d 478, 483 (9th Cir.1989). A violation of the stay is willful if the creditor knew of the bankruptcy case and acted intentionally in such a way that the stay was violated. The fact that the creditor may have acted in good faith and reasonably believed that its conduct did not violate the stay does not make its conduct not willful. *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989). The Credit Union's conduct clearly constituted a willful violation of the automatic stay.

---

1. Authority is split on whether an administrative freeze violates the automatic stay. The United States Supreme Court has granted certiorari to decide this issue in *In re Strumpf*, 37 F.3d 155 (4th Cir.1994).

■ However, 11 U.S.C. § 362(h) only applies if the person aggrieved is an individual. *In re Goodman,* 991 F.2d 613, 619 (9th Cir. 1993).[2] In the instant case, the Trustee is moving for sanctions not the debtor. Granted, the Trustee is an individual. However, he is moving on behalf of the bankruptcy estate which is an artificial entity as is a corporation or partnership.

This precise issue was presented in *In re Pace,* 159 B.R. 890 (Bankr. 9th Cir.1993). While all three judges on the Panel agreed that sanctions should be imposed in that case, only one of the three concluded that a trustee qualified as an individual within the meaning of 11 U.S.C. § 362(h). *Pace,* 159 B.R. at 903–04. The other two judges held that the party aggrieved was the bankruptcy estate rather than the trustee. They held further that the estate was an artificial entity like a corporation or partnership and, thus, not an individual under 11 U.S.C. § 362(h). *Pace,* 159 B.R. at 904–05.

■ Part of the basis for the majority's rationale was that looking to the trustee to satisfy the requirement of 11 U.S.C. § 362(h) that the party aggrieved be an individual makes no sense because a trustee need not be an individual. Either a corporation or partnership may serve as a trustee. The majority could perceive no policy reason to explain why Congress might compel the imposition of sanctions under 11 U.S.C. § 362(h) when the party aggrieved was an individual trustee while denying them when the party aggrieved was a corporate or partnership trustee.

In a similar vein, this Court also notes that, if an individual trustee may qualify as the individual injured by a violation of the stay, presumably, sanctions could be obtained pursuant to 11 U.S.C. § 362(h) in a corporate or partnership chapter 11 case in which such a trustee had been appointed. By contrast, sanctions could not be obtained where the debtor remained a debtor-in-pos-

session. Such a result would appear to be directly contrary to the intent of the statute.

All three judges in *Pace* agreed that sanctions should be imposed. The majority based its award of sanctions on 11 U.S.C. § 105(a). Unlike sanctions under 11 U.S.C. § 362(h), sanctions under § 105(a) are discretionary rather than mandatory. *In re Pace,* 159 B.R. at 904. The Court concludes that the equities require the imposition of sanctions under these circumstances.

■ The Credit Union does not appear to have acted in bad faith. Counsel for the Credit Union may have sincerely believed that the Credit Union was entitled under the law to withhold the funds and to file a motion for relief from stay. However, her opinion was clearly mistaken. The result of her mistake was the estate was required to incur the expense of attempting to compel the turnover. The estate should be made whole for the amount of this expense.

■ The fact that the Trustee ultimately agreed that the Credit Union had a valid duly perfected security interest in the sums in question is irrelevant. At the time the Trustee requested that the sums be turned over, the Trustee was not in a position to make that determination. A Trustee has a duty to preserve the assets of the estate. The Trustee acted properly in attempting to obtain the funds for safekeeping, informally, in the first place, by offering to stipulate that the creditor would suffer no adverse effect and, when that failed, by filing a motion to compel the turnover. Unless the Credit Union is required to compensate the estate for those attorneys' fees and costs which would not have been incurred had the funds been turned over upon receipt of the June 13, 1995 letter, the other creditors of the estate will be required to bear this expense. Such a result would be inequitable.

## CONCLUSION

■ The Credit Union willfully violated the automatic stay by refusing to turn over

2. There is also a split of authority on this issue. The *Goodman* court followed *In re Chateaugay Corp.,* 920 F.2d 183, 184–87 (2d Cir.1990) but noted that the Third and Fourth Circuits had held to the contrary. *See In re Atlantic Business and Community Corp.,* 901 F.2d 325, 329 (3d Cir.1990) and *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292 (4th Cir. 1986).

to the Trustee property of the estate when reasonably requested to do so. The fact that the Credit Union did not take any affirmative action to obtain the funds, had a properly perfected security interest in the funds, and filed a motion for relief from stay a few weeks later does not excuse or justify the violation. Since the aggrieved party is the bankruptcy estate, which is an artificial entity rather than an individual, sanctions may not be imposed under 11 U.S.C. § 362(h). However, sanctions may be imposed—and the Court concludes that they should be—under 11 U.S.C. § 105(a).

Within 20 days from the date of service of this decision, counsel for the Trustee shall file a proposed form of order in accordance with this decision with a blank left for the amount of the sanctions. At the same time, counsel for the Trustee shall file a declaration identifying the time and charges which would not have been incurred by the Trustee had the Credit Union turned over the funds in response to the June 13, 1995 letter. Counsel for the Credit Union shall have 10 days from the date of service of the declaration to file an objection to the amounts requested. No reply will be entertained.