**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-13-1414-KuPaTa |
| ) | |
| THOMAS WESLEY WALLACE, ) | Bk. No.   13-22160 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| THOMAS WESLEY WALLACE, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| CARCREDIT AUTO GROUP, INC., ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on February 20, 2014
at Pasadena, California

Filed – March 26, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Richard M. Neiter, Bankruptcy Judge, Presiding

_____

Appearances:     Brian L. Dobrin argued for appellant Thomas Wesley
                 Wallace; Ryan N. English of the English Law
                 Corporation argued for appellee Carcredit Auto
                 Group, Inc.

_____

Before: KURTZ, PAPPAS and TAYLOR, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

## INTRODUCTION

Debtor Thomas Wesley Wallace filed a motion seeking damages against creditor Carcredit Auto Group, Inc. for violation of the automatic stay. The bankruptcy court denied the motion and, in the same order, sua sponte annulled the stay so as to retroactively validate Carcredit's postpetition repossession of Wallace's vehicle. According to the court, Wallace did not prove that Carcredit's stay violation was willful or that Wallace suffered actual damages as a result of the stay violation. In addition, the court determined that annulment was appropriate because Wallace had not provided proof of insurance or any assurance of his future performance of the obligations he owed to Carcredit.

The bankruptcy court's findings regarding Carcredit's willfulness and Wallace's damages were clearly erroneous. Moreover, the bankruptcy court improperly annulled the stay without giving the parties an opportunity to develop the record regarding the equities of their respective positions on stay annulment. Accordingly, we REVERSE the bankruptcy court's order, and we REMAND for a new damages determination, including Wallace's reasonable attorney's fees.

## FACTS

Wallace commenced his bankruptcy case on May 8, 2013, by filing a chapter 7[1] petition. Shortly before filing for bankruptcy, on March 6, 2013, Wallace purchased an automobile

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

from Carcredit. In exchange for the automobile, Wallace agreed to make a downpayment of $1,000 and forty-eight monthly payments of $310.08.

Carcredit apparently permitted Wallace to take possession of the vehicle without first requiring him to submit proof of insurance, or to pay the full $1,000 downpayment. Instead, under the installment sales contract between Carcredit and Wallace, Carcredit agreed to let Wallace pay the downpayment in three installments. At the time of the sale, Wallace paid $372. Wallace was supposed to pay the remaining $628 balance in two equal installments of $314, on March 20, 2013, and April 5, 2013, respectively. According to Carcredit, the credit card that Wallace used to tender the March 20, 2013 payment was declined. On March 29, 2013, Wallace paid $300 in cash towards the downpayment, but he never paid the remaining balance of the downpayment nor any of the regular monthly payments.

Meanwhile, Carcredit assigned its rights under the installment sales contract to Gold Acceptance Automobile Financial Services. But the assignment agreement between Gold and Carcredit required Carcredit to "repurchase" the installment sales contract upon Wallace's default, which Carcredit apparently did. Wallace's bankruptcy schedules listed Gold as a creditor, but not Carcredit.

After Wallace commenced his bankruptcy case, Gold sent Wallace's bankruptcy counsel a letter on May 30, 2013, offering to enter into a reaffirmation agreement and assuring counsel that Gold would not take any actions in violation of the automatic stay. This letter further stated that Gold had "advised

3

[Carcredit] on 5/29 and again on 5/30 to not make any direct communications with [Wallace]" on account of the bankruptcy filing.

Nonetheless, on June 4, 2013, Carcredit repossessed the automobile from Wallace. One day later, on June 5, 2013, Wallace's counsel faxed Carcredit a letter advising Carcredit of the bankruptcy filing, asserting that the repossession violated the automatic stay, demanding that Carcredit immediately return possession of the automobile to Wallace and, if Carcredit did not comply with counsel's demand, threatening to file a motion in the bankruptcy court seeking damages based on Carcredit's stay violation.

On June 6, 2013, Carcredit's counsel sent a letter to Wallace claiming that Carcredit was not aware of Wallace's bankruptcy filing until June 5, 2013, the day after repossession, thereby denying that Gold had advised Carcredit of the bankruptcy filing before the repossession occurred. Carcredit further stated that it intended to contact the bankruptcy trustee to seek the trustee's opinion regarding the proper disposition of the car.

Wallace remained adamant in his demand for return of the automobile. That same day, June 6, 2013, Wallace sent Carcredit a fax letter again informing Carcredit that it had violated the stay by repossessing the automobile, that it was obligated to remedy the stay violation by immediately returning possession of the vehicle, and that Wallace would be filing a motion seeking damages and other relief based on Carcredit's continuing stay violation.

4

On June 12, 2013, Wallace filed a motion for damages against Carcredit for violation of the automatic stay, seeking $45 per day in actual damages, plus an estimated $2,500 in attorney's fees and $10,000 in punitive damages. The damages motion also sought return of the automobile and Wallace's personal possessions that were in the vehicle at the time of Carcredit's repossession. Wallace's damages claim was based on the court's contempt power under § 105(a) and, alternately, on § 362(k). In support of his damages claim, Wallace relied on his own declaration and the declaration of his counsel. But the evidence regarding damages was thin at best. The following paragraph from the declaration of Wallace's counsel is the only evidence that Wallace submitted directly addressing damages:

> My regular billing rate is $300 an hour. I spent one hour speaking with CarCredit, Mr. English, Christine, writing the attached letters and reading the letter from Mr. English. I spent three hours researching and drafting this motion. I expect to spend another four hours writing a Reply, and to travel to and from Court to appear at the hearing on this motion, for a total of 8 hours of attorney time, or $2,400.00 plus the cost of parking and the filing fee for this motion.

Dobrin Decl. (June 12, 2013) at ¶ 8.

Wallace sought and obtained an order from the bankruptcy court setting a hearing on the damages motion on shortened notice. Wallace then served notice of the motion and the hearing on Carcredit and its counsel, and Carcredit responded by filing two declarations, one from its president and another from its counsel. In these declarations, Carcredit once again denied having any notice or knowledge of Wallace's bankruptcy filing before it repossessed the automobile on June 4, 2013. But Carcredit once again admitted that Wallace's counsel notified it

5

of the bankruptcy filing on June 5, 2013. According to Carcredit, on June 26, 2013, after it received notice of Wallace's motion, it offered to permit Wallace to retrieve the vehicle, provided that Wallace supplied Carcredit with proof of insurance naming Carcredit as loss payee.

The initial hearing on Wallace's damages motion occurred on July 2, 2013. At the hearing, the bankruptcy court questioned Wallace's counsel regarding what Wallace really wanted to achieve by way of the motion. Wallace's counsel responded that Wallace wanted to recover possession of the automobile. Wallace's counsel further pointed out that there was no dispute that, on and after June 5, 2013, Carcredit knew of the bankruptcy filing but failed to return the car.

The court did not find these facts compelling. Instead, the court focused on Wallace's financial ability to cure the default on the installment sales contract and to make payments due under the contract. As the court put it, getting the vehicle back temporarily would not solve Wallace's underlying transportation problem. Only redeeming the contract or reaffirming it would permit Wallace to keep the automobile. The court furthermore indicated that it would not rule in Wallace's favor on any damages claim for violation of the automatic stay unless Wallace proved his ability to pay for the vehicle:

THE COURT: Well, whether there's a violation of the stay or not, what are you -- supposing there is a violation of the stay. But for your seeking sanctions, that wouldn't resolve the problem, would it? Your client still wouldn't have the car.

MR. DOBRIN: Well, I did request that you order that the car be returned as well.

6

> THE COURT: But, that's only half of the remedy.
> The other half is how does your client pay for the car.
>
> MR. DOBRIN: The remedy to my client, or to the
> creditor?
>
> THE COURT: The remedy of the problem. I don't intend to
> solve this only half way today. <u>Either your client is
> going to pay for the car and convince me how he can pay
> for the car, and then I'll rule on the sanctions order,
> or he won't.</u>

Hr'g Tr. (July 2, 2013) at 4:19-5:9 (emphasis added). The court continued the hearing on the motion to allow Wallace an opportunity to present evidence on his ability to pay for the automobile under the terms of the installment sale contract.

On July 15, 2013, the day before the continued hearing on the damages motion, the bankruptcy court issued a tentative ruling in favor of Carcredit and against Wallace. Among other things, the court noted that Wallace had not provided evidence of insurance or any assurance that he was financially capable of performing in compliance with the terms of the installment sales contract. Based on this lack of evidence, the court stated that it was prepared to annul the automatic stay. The court further noted that it was not clear whether Carcredit had notice of the bankruptcy filing before it repossessed the vehicle on June 4, 2013. Based on these circumstances, the court concluded that Carcredit did not willfully violate the stay and that Wallace had not proven that he had incurred any actual damages.[2]

---

[2]The full text of the tentative ruling is as follows:

While the repossession of the vehicle is a violation of
the automatic stay under 11 U.S.C. § 362(a), it is not
clear that CarCredit had notice of Debtor's bankruptcy

continue...

7

At the second hearing, Wallace's counsel attempted to persuade the bankruptcy court that the facts were sufficient to demonstrate a willful stay violation and Wallace's entitlement to a damages award. But the bankruptcy court was unpersuaded. In essence, the court held that the automatic stay did not require Carcredit to return the repossessed vehicle unless Wallace tendered proof that Carcredit's interest in the vehicle was adequately protected. According to the court, in order to demonstrate adequate protection, Wallace should have provided proof of insurance and demonstrated his willingness and ability to cure the payment default under the installment sales contract, but he failed to do either.

Wallace's counsel also advised the court that his client, in the interim, had obtained another automobile to use, so he no

[2]...continue
filing and the stay on or before 6/4/2013, the day CarCredit repossessed the vehicle. CarCredit declares that it did not have notice of Debtor's bankruptcy filing until 6/5/2013 and Debtor relies on a letter from the attorney of Gold Acceptance that does not expressly state that notice was given to CarCredit prior to the repossession. Furthermore, in In re Fitch, 217 B.R. 286, 291 (Bankr. S.D. Cal. 1998), the bankruptcy court found that a demand for proof of insurance in exchange for return of the vehicle is a valid request. At the prior hearing, the Court inquired of Debtor's counsel to provide proof of insurance and an indication that Debtor can cure the delinquency and reaffirm the agreement (e.g., the agreement will not be an undue burden on Debtor). Debtor has not provided such adequate assurances of future performance. Absent such evidence, the Court will annul the automatic stay. Furthermore, based on the foregoing, the Court finds no willful violation of the automatic stay by CarCredit nor evidence of actual damages to Debtor.

longer wanted the automobile that Carcredit had repossessed. Based on this information, the bankuptcy court ruled that all of the attorney's fees that Wallace incurred in attempting to recover the automobile from Carcredit were unnecessary. The bankruptcy court concluded the hearing by explicitly adopting its tentative ruling as its final ruling on the damages motion.

On August 13, 2013, the bankruptcy court entered an order denying Wallace's damages motion and sua sponte granting Carcredit relief from stay with respect to the automobile. Wallace timely filed a notice of appeal on August 26, 2013.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (G). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the bankruptcy court commit reversible error when it found that Carcredit did not willfully violate the automatic stay?

2. Did the bankruptcy court properly assess Wallace's entitlement to damages under § 362(k)?

**STANDARDS OF REVIEW**

The bankruptcy court's determination that a creditor did not willfully violate the automatic stay is a finding of fact we review under the clearly erroneous standard. See Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010); Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006). An erroneous view of the law may induce the bankruptcy court to make a clearly erroneous finding of fact. Id. A court's findings of

9

fact also are clearly erroneous if they are "illogical, implausible, or without support in the record." Retz v. Sampson (In re Retz), 606 F.3d 1189, 1197 (9th Cir. 2010).

We review the bankruptcy court's assessment of damages under § 362(k) for an abuse of discretion. See Sternberg, 595 F.3d at 945; Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1213 (9th Cir. 2002).[3] We apply a two-part test to determine whether the bankruptcy court abused its discretion. First, we review de novo whether the bankruptcy court selected the correct legal standard to apply. Hinkson, 585 F.3d at 1261-63. And second, if the bankruptcy court selected the correct legal standard, we consider whether the court's findings and its application of those findings to the correct legal standard were illogical, implausible or without support in the record. Id. at 1262.

## DISCUSSION

To award damages under § 362(k) for violation of the automatic stay, the bankruptcy court must find that the creditor willfully violated the stay. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003) (citing Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir. 1992)). And to find a willful stay violation, the bankruptcy court must conclude that the creditor knew of the bankruptcy filing and intended the actions that violated the

---

[3]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23, revised and renumbered § 362 such that the provisions concerning damages for violation of the automatic stay, formerly contained in § 362(h), were moved to § 362(k). See Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 822 n.7 (9th Cir. BAP 2010).

10

stay.  See id.

The bankruptcy court here acknowledged that Carcredit's repossession of the automobile constituted a technical violation of the automatic stay.  However, the bankruptcy court found that Carcredit did not willfully violate the stay by repossessing the vehicle.  According to the court, Carcredit did not have notice of the bankruptcy filing until June 5, 2013, the day after it repossessed the vehicle.  Therefore, the court inferred, the repossession was not a willful stay violation.

As far as it goes, this finding is unobjectionable.  However, in making this finding, the bankruptcy court ignored Carcredit's conduct on and after June 5, 2013.  As of June 5, 2013, Carcredit knew of Wallace's bankruptcy filing, and yet Carcredit never volunteered to unconditionally return the vehicle to Wallace.[4]

In order to comply with the automatic stay, once it learned of Wallace's bankruptcy filing, Carcredit had an "affirmative duty" to remedy its prior, inadvertent stay violation by returning the automobile to Wallace.  See In re Dyer, 322 F.3d at 1192 (citing Cal. Employment Dev. Dep't v. Taxel (In re Del

[4]The bankruptcy court found that Carcredit offered to return the vehicle to Wallace if he provided proof of insurance.  The only evidence we found in the record supporting this finding was a statement in the declaration of Carcredit's counsel, which provided: "On June 26, 2013, I left a voicemail for [Wallace's counsel] advising him that his client could retrieve the vehicle but wanted proof of insurance naming Carcredit as loss-payee." English Decl. (June 27, 2013) at ¶ 4.  There is no evidence in the record that Carcredit was prepared to return the vehicle to Wallace before that date.  Moreover, as we hold infra, Carcredit was not entitled to condition its return of the vehicle upon presentation of proof of insurance or upon any other terms.

11

Mission Ltd.), 98 F.3d 1147, 1155 (9th Cir. 1996)); see also Sternberg, 595 F.3d at 945 ("To comply with his 'affirmative duty' under the automatic stay, Sternberg needed to do what he could to relieve the violation."). Accord, In re Mwangi, 432 B.R. at 822 (citing Abrams v. Sw. Leasing & Rental, Inc. (In re Abrams), 127 B.R. 239, 242-43 (9th Cir. BAP 1991)).

Thus, Carcredit's knowing retention of the vehicle after learning of Wallace's bankruptcy filing was a separate and independent violation of the automatic stay. See In re Abrams, 127 B.R. at 243 (citing § 362(a)(3)). And there can be no legitimate doubt here that this stay violation was willful. Carcredit knew about the bankruptcy filing on and after June 5, 2013, and yet it never returned the vehicle to Wallace despite his repeated demands. These facts patently satisfy the test for willfulness set forth in In re Dyer, 322 F.3d at 1191.

It is not entirely clear why the bankruptcy court did not find Carcredit's failure to return the vehicle a violation of the automatic stay, willful or otherwise. Citing In re Fitch, 217 B.R. 286, 291 (Bankr. S.D. Cal. 1998), the bankruptcy court indicated that Carcredit was entitled to require proof of insurance before returning the vehicle. But In re Fitch is inapposite. In Fitch, the creditor lawfully repossessed the vehicle prepetition, so postpetition there was no prior stay violation the creditor needed to remedy by returning the vehicle. Id. at 290-91.[5]

---

[5]We need not decide here whether we would follow In re Fitch if we were confronted with a prepetition repossession instead of

continue...

12

In this case, the notion that Carcredit, which indisputably violated the automatic stay by repossessing the vehicle postpetition, could condition its efforts to rectify its stay violation upon the debtor taking certain actions, like providing proof of insurance and providing assurance of future performance, is inconsistent with the holding in In re Del Mission Ltd., In re Mwangi and In re Abrams. These cases stand for the proposition that creditors have a mandatory and unconditional duty under §§ 362(a)(3) and 542(a) to relinquish control of estate property acquired or controlled postpetition. See In re Del Mission Ltd., 98 F.3d at 1151; In re Mwangi, 432 B.R. at 823-24; In re Abrams, 127 B.R. at 242-43.

Alternately, the bankruptcy court held that, in light of Wallace's failure to submit proof of insurance and to demonstrate his financial ability to perform under the installment sales contract, cause existed for annulment of the automatic stay, which retroactively validated Carcredit's repossession and retention of the vehicle. Therefore, the court reasoned, there was no stay violation in light of the retroactive effect of the court's annulment ruling.

As a threshold matter, this Panel has expressed doubt that annulment of the stay nullifies the statutory consequences of a willful stay violation for purposes of a § 362(k) claim. See

---

⁵...continue

a postpetition repossession. However, we note that In re Fitch is directly at odds with Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir. 1989), cited with approval in, In re Del Mission Ltd., 98 F.3d at 1151, and In re Abrams, 127 B.R. at 242 & n.6.

13

Williams v. Levi (In re Williams), 323 B.R. 691, 702 (9th Cir. BAP 2005). Even if a technical stay violation may be "cured" by stay annulment, the continuing stay violation evident herein was decidedly not a mere technical stay violation. Rather, it was an overtly willful stay violation, which presumably cannot be cured by stay annulment. See id.

Even if we were to assume that the statutory consequences of a willful stay violation could be nullified by annulment of the stay, the bankruptcy court erred when it annulled the stay sua sponte, deprived the parties of an opportunity to develop the record regarding the equities of their respective positions on stay annulment and failed to weigh those equities. See Gasprom, Inc. v. Fateh (In re Gasprom, Inc.), 500 B.R. 598, 607-08 (9th Cir. BAP 2013). As in In re Gasprom, the bankruptcy court here made no attempt to weigh anything. It simply held, without any advance warning, that Carcredit was entitled to annulment of the stay because Wallace did not provide either proof of insurance or any assurance of his future performance.

In so ruling, the bankruptcy court ignored the fact that one of the key purposes of the automatic stay is to give debtors a "breathing spell" from their creditors. See Sternberg, 595 F.3d at 945 (citing Goichman v. Bloom (In re Bloom), 875 F.2d 224, 226 (9th Cir. 1989)). By refusing to return the vehicle to Wallace, Carcredit denied Wallace even the temporary breathing space that might have provided an opportunity for an orderly search for an alternate means of transportation.

Carcredit was entitled to seek relief from stay based on Wallace's failure to provide proof of insurance and some

14

assurance of his future performance, but Carcredit never filed a relief from stay motion, nor did it take any other legally permissible action to assert its rights in the vehicle once it learned of Wallace's bankruptcy filing. Under In re Del Mission Ltd., In re Mwangi and In re Abrams, Carcredit's retention of the vehicle repossessed in violation of the stay was not a lawful option. Under these circumstances, we must reverse the bankruptcy court's stay annulment ruling. See In re Gasprom, Inc., 500 B.R. at 607-08.

The bankruptcy court also found that Wallace failed to prove that he incurred any actual damages as a result of Carcredit's stay violations. According to the bankruptcy court, the attorney's fees Wallace incurred in bringing the damages motion were unnecessary because Wallace ultimately agreed, by the time of the second hearing, to surrender his right to possession of the vehicle because he had, by that time, arranged for an alternate means of transportation.

We are perplexed by the bankruptcy court's damages finding. The record establishes that, at the time of the first hearing, Wallace did not yet have an alternate means of transportation and, at that time, still sought return of the vehicle from Carcredit. It was only sometime after the first hearing, at which the court announced that Wallace was not entitled to return of the vehicle without proof of insurance and an assurance of future performance, that Wallace obtained a different vehicle from another source. Furthermore, Wallace's efforts to obtain alternate transportation were consistent with his duty to mitigate damages. See Eskanos & Adler v. Roman (In re Roman),

15

283 B.R. 1, 12 (9th Cir. BAP 2002). It does not make any sense to disallow all of Wallace's fees on account of his successful efforts to mitigate damages.

Put another way, an award of actual damages, including reasonable attorney's fees, is mandatory under § 362(k) once the debtor establishes that the creditor willfully violated the automatic stay. See Sternberg, 595 F.3d at 947. The amount of attorney's fees awarded should be limited to those that are reasonable and necessary to remediate the stay violation. Id. at 949. Here, the bankruptcy court in essence found that all of Wallace's attorney's fees were unreasonable and unnecessary because Wallace later found another means of transportation. This finding was clearly erroneous. The record establishes that, before Wallace found an alternate means of transportation, his counsel contacted Carcredit both by phone and in writing demanding return of the vehicle and, when Carcredit did not comply with these demands, counsel filed the damages motion and attended the first hearing on the damages motion. Under § 362(k), the reasonable fees incurred in rendering these services are recoverable as actual damages. See id.

On remand, the bankruptcy court, at a minimum, must determine the amount of attorney's fees Wallace reasonably incurred, before finding another means of transportation, in attempting to recover the vehicle from Carcredit. See generally In re Roman, 283 B.R. at 11 (utilizing § 330(a) standards for determining reasonable professional compensation as a guide for awarding attorney's fees under § 362(h)). Wallace also is entitled to consideration of his punitive damages claim on

16

remand, although we express no opinion as to what amount of punitive damages, if any, should be awarded. See generally In re Bloom, 875 F.2d at 227-28 (reviewing punitive damages award); In re Daniels, 316 B.R. 342, 355-57 (Bankr. D. Idaho 2004) (discussing punitive damages standards).[6]

**CONCLUSION**

For the reasons set forth above, we REVERSE the bankruptcy court's order denying Wallace's damages motion and granting Carcredit retroactive relief from the automatic stay, and we REMAND for further proceedings consistent with this decision.

---

[6]In the alternative, Wallace sought civil contempt sanctions against Carcredit under § 105(a) based on Carcredit's willful violation of the automatic stay. In light of our analysis and disposition of this appeal, we decline to address Wallace's alternate ground for relief.

17