## DANA INVESTMENT CORPORATION *v.* RICHARD SCHLESINGER ET AL.

Superior Court  Judicial District of  File No. CV930314027S
Danbury

Memorandum filed October 28, 1998*

*Pinney, Payne, Van Lenten, Burrell, Wolfe & Dillman,* for the named plaintiff et al.

*Friedman, Mellitz & Newman* and *Donald A. Mitchell,* for the substitute plaintiff Quik-Power International Corporation.

*Chipman, Mazzucco, Land & Pennarola,* for the defendant Crystal Bay Limited Partnership et al.

*Camhy, Karlinsky & Stein,* of the New York bar, for the defendant Poughkeepsie Savings Bank FSB et al.

### I

### INTRODUCTION

ROGERS, J. The present proceeding is a quiet title action regarding property located at Candlewood Lake in Danbury (property).

---

* Affirmed. *Dana Investment Corp.* v. *Schlesinger,* 60 Conn. App. 76, 759 A.2d 99 (2000).

Dana Mark David Limited Partnership (Dana Mark David) originally acquired the property in May, 1987. At the time of the acquisition, Richard Schlesinger and William Weinstein were the general partners of Dana Mark David, and the named plaintiff, Dana Investment Corporation (Dana), was the sole limited partner.

On July 3, 1987, Dana Mark David mortgaged the property to U.S. Trust/Connecticut for $2,500,000; this mortgage was immediately assigned to Chemical Bank. Subsequently, the Chemical Bank mortgage was increased to $2,651,000 when a small parcel adjacent to the main parcel was added.

The final amended complaint alleges that the substitute plaintiff, Quik-Power International Corporation (Quik-Power), is bringing this claim as an assignee for Dana, and that Dana is acting derivatively, in its capacity as a limited partner, on behalf of Dana Mark David. The final amended complaint further claims that title to the property rests in Dana Mark David; there is no claim that Quik-Power possesses title to the property.

II

## DANA FULFILLED ITS OBLIGATION TO OBTAIN WRITTEN COMMITMENTS FOR RELEASE

In anticipation of creating Dana Mark David, Dana, Weinstein and Schlesinger executed an agreement and rider (agreement) dated May 1, 1987. One of Dana's obligations under the agreement was to obtain written commitments for release from existing encumbrances on the property by September 1, 1987. If Dana did not fulfill this obligation, the general partners would possess irrevocable power of attorney for Dana's limited partnership interest.

Dana, as the sole limited partner, did not default on its obligation under the agreement to provide commitments for release. On July 22, 1987, Dana provided

written commitments for release to the general partners by correspondence enclosing written payoff figures for the listed encumbrances. This fulfilled Dana's obligation under the agreement.

Contrary to the defendants'[1] position at trial that Dana's obligation had not been satisfied, the general partners continued to perform under the agreement by attempting to secure financing. The general partners were obligated to secure financing only if the July 22, 1987 correspondence satisfied the written commitment obligation. Additionally, the general partners did not inform Dana that they were taking the position that Dana had defaulted on this obligation until July 12, 1988, which was one full year later and only after Dana had informed the general partners that it was attempting to terminate the limited partnership pursuant to a letter dated July 8, 1988. Finally, the agreement specifically provided that the commitments were subject to the reasonable approval of counsel to Mark David Associates, a Connecticut general partnership of which Weinstein and Schlesinger were the general partners. Counsel to Mark David Associates did not provide notice to Dana that the written commitments were not approved by the general partners.

## III

## THE GENERAL PARTNERS OF DANA MARK DAVID DID NOT POSSESS IRREVOCABLE POWER OF ATTORNEY FOR DANA AND THEREFORE COULD NOT TRANSFER THE PROPERTY TO MARK DAVID ASSOCIATES

On July 12, 1988, the general partners, Weinstein and Schlesinger, assigned all of the interest that Dana had

---

[1] The defendants Mark David Associates, Richard Schlesinger and William Weinstein were defaulted on October 4, 1998. The remaining defendants are Crystal Bay Development, LLC, Poughkeepsie Savings Bank FSB, Pond View Village, LLC, and Bridgeport Oral and Maxillofacial Profit Sharing Plan.

in Dana Mark David to Mark David Associates, the Connecticut general partnership of which Weinstein and Schlesinger were the general partners. This was allegedly done by the general partners pursuant to their irrevocable power of attorney for Dana. By quitclaim deed, dated August 3, 1988, Schlesinger and Weinstein, acting as general partners of Dana Mark David, conveyed the property to Mark David Associates.

On August 31, 1988, Mark David Associates granted a mortgage to First Constitution Bank to secure a loan in the amount of $4,600,000 from First Constitution Bank. Of those mortgage proceeds, $2,675,742.67 were used to pay off the existing Chemical Bank mortgage on the property. There was no evidence presented as to what happened to the remaining proceeds from the loan.

Dana was not informed that the general partners had executed and delivered deeds for the property to Mark David Associates, or that a new mortgage had been placed on the property. Dana was also not informed that the general partners were taking this action on the basis of their incorrect position that Dana had defaulted on its obligation to obtain commitments, and that the general partners therefore possessed irrevocable power of attorney for Dana's limited partnership interest. For all of these reasons, the court finds that the general partners did not, and probably were aware that they did not, possess irrevocable power of attorney to transfer the property from Dana Mark David to Mark David Associates.

The First Constitution mortgage subsequently went into default and a foreclosure action was commenced by the bank by complaint dated August 9, 1990. First Constitution Bank failed and the Federal Deposit Insurance Corporation (FDIC) acquired the note and mortgage from Mark David Associates. Subsequently, the

FDIC assigned its interests in the note and mortgage to Crystal Bay Limited Partnership. After a series of appeals, Crystal Bay Limited Partnership completed the foreclosure in November, 1994, and recorded a certificate of foreclosure on the Danbury land records dated January 24, 1995, and recorded January 25, 1995. Crystal Bay Development, LLC, acquired title from Crystal Bay Limited Partnership by warranty deed dated June 25, 1997.

The court need not decide the legal effect of these transactions because, as discussed below, Crystal Bay Limited Partnership acquired title to the property through separate bankruptcy proceedings regarding Dana Mark David.

## IV
## THE DANA MARK DAVID AND DANA BANKRUPTCY PROCEEDINGS

Nicholas Attick, Jr., filed a chapter eleven bankruptcy petition on behalf of Dana Mark David on March 23, 1995. On September 26, 1995, on motion of the United States trustee, the chapter eleven case filed by Attick was converted to a chapter seven liquidation, and attorney Alan Sibarium was appointed as trustee.

On November 20, 1996, the Bankruptcy Court held a hearing specifically to consider the sale of all of the estate's interest in the property and in this quiet title action to Crystal Bay Limited Partnership. Quik-Power's attorney appeared at that proceeding. The Bankruptcy Court entered an order dated November 20, 1996, specifically approving the sale of the property and assignment of Dana Mark David's interest in this quiet title action to Crystal Bay Limited Partnership.

On December 13, 1996, the trustee assigned and sold to Crystal Bay Limited Partnership all of the estate's rights, titles and interest in and to Dana Mark David.

On December 23, 1996, the trustee executed and delivered to Crystal Bay Limited Partnership a quitclaim deed to the property. The deed was recorded on January 3, 1997. Crystal Bay Limited Partnership then assigned its rights obtained from the trustee to the present defendant, Crystal Bay Development, LLC.

Attick, as president of Dana, also caused Dana to file a chapter eleven bankruptcy petition on October 2, 1994, which was subsequently converted to a chapter seven proceeding on May 30, 1995. The court again appointed Sibarium as trustee. The trustee sold to Crystal Bay Limited Partnership any and all rights and claims of Dana in the property and in this quiet title action after notice and a hearing held jointly with the Dana Mark David hearing on November 20, 1996.

On December 23, 1996, the trustee executed and delivered a quitclaim deed to the property to Crystal Bay Limited Partnership. Crystal Bay Limited Partnership later assigned all its rights in the property and the quiet title action to Crystal Bay Development, LLC.

V

DANA MARK DAVID AND DANA'S INTERESTS IN THE PROPERTY WERE NOT ASSIGNED TO A THIRD PARTY PRIOR TO THE BANKRUPTCY PROCEEDINGS

Dana presented evidence during the trial in which it attempted to demonstrate that Dana Mark David and Dana assigned their interests in the property to Consolidated Investment Corporation (Consolidated) prior to filing bankruptcy proceedings, thereby taking the property out of the bankruptcy estates. The first assignment was allegedly dated April 5, 1990, from Dana to Consolidated. Consolidated's sole shareholder was Attick's uncle, Taffy Jowdy. A companion assignment was also

admitted into evidence which, on its face, assigned Consolidated's rights obtained from Dana to Quik-Power, a company owned by Jowdy's brother, James, another uncle to Attick. This assignment was dated March 3, 1992.[2]

The plaintiffs also placed in evidence a purported assignment of any interest in the property and rights to the quiet title action dated April 5, 1990, from Dana Mark David to Consolidated and another dated March 3, 1993, from Consolidated to Quik-Power.

As fact finder, this court found the testimony of the witnesses for the named plaintiff regarding the assignments not believable. Aside from assessing the demeanor of the plaintiff's witnesses in reaching the conclusion that these were not valid assignments, the court also took into consideration other evidence presented during trial that refutes that the assignments existed prior to the Dana Mark David and Dana bankruptcy proceedings. Specifically, the named plaintiff was unable to produce originals of the assignments. Additionally, the substitute plaintiff Quik-Power first claimed to be the assignee of Dana in December, 1995, only after the bankruptcy trustee had been appointed and after Attick had lost control of Dana's bankruptcy estate because of the conversion of Dana's chapter eleven proceedings to a chapter seven bankruptcy proceeding. At that time, Quik-Power made no claim as an assignee of Dana Mark David. Interestingly, when the Dana assignment surfaced in December, 1995, no mention was made of any other assignments. In fact, the

---

[2] Quik-Power was not incorporated until January 6, 1993, and thus did not exist on March 3, 1992. For the first time, in January, 1997, Jowdy produced, at his deposition, another copy of the alleged assignment of Dana'a rights from Consolidated to Quik-Power, which was dated March 3, 1992. The new copy now contained a handwritten notation asserting that the execution date was actually March 3, 1993, and that the 1992 date was an error.

attorney who initially presented the Dana assignment to defense counsel, also sent a letter dated December 6, 1995, to the Danbury planning commission, again referencing only an assignment from Dana to Quik-Power and asserting that the "true legal owner" of the property remained Dana Mark David.

The appearance of Quik-Power in late 1995 should be contrasted with the numerous sworn statements and pleadings filed by Attick, between 1990 and 1995, all claiming that Dana and/or Dana Mark David owned the property. None of these rulings mentioned any assignment to Consolidated or Quik-Power. These filings include: the New York RICO complaint filed in June, 1991; the lis pendens filed in the foreclosure action in June, 1993; the original complaint in this quiet title action dated June 15, 1993; the affidavit filed by Attick in the *Carmeroto* action; the Dana motion to intervene in the foreclosure action dated November 10, 1993; the amended complaint filed in February, 1994; and the Attick letter to the Danbury planning commission dated March 15, 1995.

The purported Dana Mark David assignment did not appear until 1997 as part of this quiet title action. In a motion filed on January 24, 1997, Crystal Bay Limited Partnership sought summary judgment based on the trustee's sale. Quik-Power filed its objection to this motion on March 7, 1997, arguing that it was pursuing the quiet title action on the basis of the Dana assignment's predating the bankruptcy filing. Quik-Power did not claim any assignment of Dana Mark David's interest. On March 10, 1997, Crystal Bay Limited Partnership filed its reply and pointed out that Dana's assignment to Quik-Power, even if valid, was immaterial because Dana Mark David's rights had been assigned by the trustee to Crystal Bay Limited Partnership. Since Quik-Power claimed only derivative rights on behalf of Dana

Mark David, Crystal Bay Limited Partnership owned the property regardless of any assignment of Dana's rights.

On March 20, 1997, Quik-Power filed a further memorandum regarding its objection to summary judgment, and, for the first time, produced the two additional assignments from Dana Mark David to Consolidated and from Consolidated to Quik-Power.

Attick identified a single attorney, deceased New York attorney Howard Cerny, as the author of the assignments. For obvious reasons, he was unable to testify.

Additionally, the Dana Mark David agreement specifically provided that Dana could assign its interest only with the written consent of a general partner. No such written consent was given.

Finally, it is undisputed that the assignments were never placed on the land records. Given the potential value of the property, this court finds it incredible that these purported assignments were not filed on the land records if they actually existed at the time they were allegedly executed.[3]

---

[3] Dana's attempt to take advantage of General Statutes § 33-749 is unavailing. Because the court has found that the assignments were not executed on April 5, 1990, or March 3, 1993, the consents signed during the trial regarding these purported assignments do not make them effective as of April 5, 1990, or March 3, 1993. Dana would be able to take advantage of this statute to ratify a prior act by consent without formal meeting only if the earlier act had actually occurred. Ratification is defined as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account." (Internal quotation marks omitted.) *Russell* v. *Dean Witter Reynolds, Inc.*, 200 Conn 172, 185, 510 A.2d 972 (1986). In the present case, the court has found that the assignments were not actually executed on April 5, 1990, or March 3, 1993. On the basis of the evidence presented during trial, and after a careful assessment of the witnesses' credibility while testifying, the court simply does not believe that the assignments were executed prior to the bankruptcy proceedings. It should also be noted that a handwriting expert testified that some of the signatures were transposed and not authentic. Even in the absence of this testimony, the court would make the finding that these assignments did not exist prior to the bankruptcy proceedings and, therefore, have no legal significance.

Because the court finds that there were no assignments of the property to Consolidated and Quik-Power prior to the bankruptcy proceedings, and because the court finds that the 1988 deeds attempting to transfer the property to Mark David Associates were invalid, the property and any claims to the property and the quiet title action remained in Dana Mark David until these interests were sold as part of the bankruptcy proceedings to Crystal Bay Limited Partnership.

## VI

## DISCUSSION

Section 34-28a of the General Statutes sets forth provisions for a nonjudicial dissolution and provides in relevant part: "A limited partnership is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following: (1) At the time specified in the partnership agreement; (2) upon the happening of events specified in the partnership agreement; (3) written consent of all partners; (4) an event of withdrawal of a general partner unless at the time there is at least one other general partner and the partnership agreement permits the business of the limited partnership to be carried on by the remaining general partner and that partner does so . . . or (5) entry of a decree of judicial dissolution under [General Statutes §] 34-28b."

On July 8, 1988, a letter was sent by Dana's attorney seeking to terminate the "joint venture." The letter of July 8, does not state that the limited partnership is dissolved, and does not refer to any dissolution based on a vote of the limited partners as described in Dana Mark David's certificate of limited partnership. There was no evidence presented that there was actually a vote to dissolve the limited partnership. Finally, no dissolution papers were filed in the partnership records. It is, therefore, questionable whether this letter was

sufficient to effect a dissolution of the limited partnership.

Even if Dana Mark David was dissolved by this letter, its affairs had not been wound up and the property remained in the limited partnership. General Statutes § 34-28c. A partnership that is dissolved does not immediately cease to exist. In fact, Dana repeatedly concedes, in its posttrial memorandum, that legal title remained in Dana Mark David after dissolution of the limited partnership. Dana also claims, however, that it had an equitable claim to the property because the agreement provided that, upon termination of the limited partnership, the property would be returned to Dana. Dana implicitly recognized in its memorandum that, at best, it had a claim to the property that it could have sought to enforce by way of an action for specific performance of the agreement. Dana, however, did not pursue such an action, and, therefore, title to the property remained in Dana Mark David.[4]

The court also finds that the property remained in Dana Mark David because the deeds from Dana Mark David to Mark David Associates in August, 1988, were invalid. The general partners did not possess irrevocable power of attorney for Dana's limited partnership interest, and they did not have the legal authority to transfer the property without the agreement of the limited partner, Dana.

For all the foregoing reasons, the title to the property remained in Dana Mark David when the bankruptcy petition was filed. Accordingly, when Attick filed the bankruptcy petition on March 23, 1995, title to the property vested in Dana Mark David, debtor in possession,

[4] Even if we assume arguendo, however, that Dana had title to the property, because the court has found that the property was not assigned before the Dana bankruptcy petition was filed, the property and any claim to the property was part of the bankruptcy estate of Dana, which was ultimately sold to Crystal Bay Limited Partnership.

by virtue of the filing of the Dana Mark David bankruptcy petition. That filing created a bankruptcy estate pursuant to 11 U.S.C. § 541, consisting of all property in which Dana Mark David had a legal or equitable interest, wherever located and by whomever held.

On September 26, 1995, title to the property passed to the chapter seven debtor, Dana Mark David, by virtue of the conversion of the chapter eleven case to a chapter seven case by order dated September 26, 1995. The estate continued to possess all interest of Dana Mark David in the property. The estate owns property rights even if the debtor fails to list those rights in the schedules. See *In re Pace*, 159 B.R. 890, 899 (B.A.P. 9th Cir. 1993).

On November 20, 1996, the Bankruptcy Court entered an order approving the sale of the property and an assignment of Dana Mark David's interest in this quiet title action to Crystal Bay Limited Partnership. On December 13, 1996, the trustee assigned and sold to Crystal Bay Limited Partnership all of the estate's rights, title and interest in and to Dana Mark David.

On December 23, 1996, Sibarium, the chapter seven trustee of Dana Mark David, deeded all of Dana Mark David's interest in the property to Crystal Bay Limited Partnership.

The Dana Mark David trustee's power to sell whatever interest Dana Mark David possessed in the property is undisputed. The trustee was fully authorized under 11 U.S.C. § 363 (b) (1) to sell the property and any claims to the property of both Dana Mark David and Dana after notice and hearing.

The deed to the property was recorded on January 3, 1997. As a result, Crystal Bay Limited Partnership became fully vested in all rights, title and interest of Dana Mark David to the property.

On June 25, 1997, title to the property passed to Crystal Bay Development, LLC, by virtue of a deed from Crystal Bay Limited Partnership dated June 25, 1997.

Thereafter, Crystal Bay Development, LLC, conveyed the property to the defendants Poughkeepsie Savings Bank FSB, Pond View Village, LLC, and Bridgeport Oral and Maxillofacial Profit Sharing Plan by mortgages that appear of record retaining the equity of redemption.

## VII

## CONCLUSION

For all the foregoing reasons, the court renders judgment quieting title to the property in the defendant Crystal Bay Development, LLC, subject to the mortgages in favor of the defendants Poughkeepsie Savings Bank FSB, Pond View Village, LLC, and Bridgeport Oral and Maxillofacial Profit Sharing Plan.